This proceeding to determine the paternity of an illegitimate child was brought under the provisions of Title 27, § 12 (1)-(9), Code of Alabama. The cause was tried to a jury which returned a verdict finding that the defendant was the father of the child. The trial court then ordered the defendant to pay $25.00 per week to support the child.
The defendant appealed and asserts two arguments which he says require a reversal.
In his opening statement, the attorney for the state stated to the jury:
 ". . . We expect to show you further that during the time that she was pregnant and also after the child was born that he did and said certain things that you will hear about that indicate that he knew and considered that he was the father of that child, and we also expect to show you the results of a blood test that was done at his request —
"Mr. Bone: If the Court please —
. . . . .
 "Mr. Bone: At this time, if it please the Court, we ask the Court — we object to the statement that was made and we ask the Court to declare a mistrial. The blood test is not evidence and can not be used as evidence in this case or any other proceedings of this type. That's not for the Jury.
 "Mr. Keener: It's a part of the actual Court file and was done under a court order. I don't know specifically —
 "Mr. Bone: The mistake has been made and I don't see how it can be corrected.
 "The Court: It's not evidence for the State, it's evidence for the Defendant if he wants to use it. He doesn't have to.
"Mr. Keener: All right.
 "The Court: I'm going to instruct the Jury to disregard any reference to any blood test and hope to cure it that way, but I'm not going to declare a mistrial.
 "Mr. Bone: May it please the Court, I do not see what instructions this Court could give. The seed now has been planted and regardless of whether — what instructions you give to the Jury they are *Page 400 
going to think and they have to think — I'm not going to put it into evidence, did not put it into evidence, but they're going to think that the evidence will show by the blood test that he is the father and I don't see how it can be cured and I think any comments by the Court is going to make the matter worse.
. . . . .
 "The Court: The results of the test can be received in evidence and the trial of the case, but only in cases where definite exclusion is established.
 "Mr. Keener: Well, I obviously made an error, but I just assumed it was admissible, it was part of the Court file.
 "Mr. Bone: I think, Judge, any comments made by the Court to try to correct it is going to worsen the matter. It actually puts me in a position of — if the Court does not declare a mistrial, of having to introduce it myself, which is the very way it's worded, as you know, the paternity can not be excluded, the Defendant can not be excluded. In the way it's worded the average layman is going to construe that to mean what I don't want them to think that it means.
 "Mr. Keener: Is there anyway, any language I can use to correct it to your satisfaction in the opening statement?
 "Mr. Bone: Larry, I don't — there again, I can't afford to say anything about it and I'd rather that you didn't and I don't want the Court to comment on it. That's the part that frightens me. I don't know why."
On appeal, the defendant asserts that the trial court should be reversed for refusing to order a mistrial because of the state's reference to a blood test.
The record shows that the trial judge told the defendant's attorney that he was ". . going to instruct the Jury to disregard any reference to any blood test and hope to cure it that way, but I'm not going to declare a mistrial."
The defendant strongly objected to the trial court's so instructing the jury and objected to the state's attorney withdrawing any reference to the blood test from the jury's consideration. Clearly, under our cases, had the trial judge instructed the jury to disregard the remarks of the state's attorney making reference to a blood test, such instruction would have had the effect of eradicating any harm that might have been caused by the remark. Birmingham Electric Co. v.Guess, 222 Ala. 280, 131 So. 883 (1930); Life Casualty Ins.Co. v. Cain, 217 Ala. 301, 116 So. 154 (1928). The defendant, however, expressly objected to the court's so instructing the jury, standing on his contention that the harm could not be eradicated by an admonition from the court to the jury to disregard the remark.
We cannot agree. True, the test for determining whether a statement made during trial is so highly prejudicial as to require a mistrial is whether the prejudicial effect or tendency of the remark can be counteracted by an appropriate instruction from the court, or whether, instead, it is beyond the reach of such remedial action. Kilcrease v. Harris,288 Ala. 245, 259 So.2d 797 (1972). However, it is equally true that whether the statement or remark is so highly prejudicial as to require a mistrial is within the discretion of the trial court, and its determination of that issue should not be reversed unless its discretion is abused.
It is quite clear from the record that the trial judge believed that the harm done by the remark, if any, could be cured by his instructing the jury to disregard the remark. The defendant expressed his belief that such an instruction would only make matters worse. The decision to leave the jury unadmonished to disregard the remark was the defendant's. We cannot, under these circumstances, reverse the trial court for refusing to declare a mistrial.
The defendant also argues that a reference to a blood test by the mother of the child, on cross-examination, requires reversal. The defendant's attorney asked Ms. Mabry the state's witness, the following question:
"Q You were trying to tell him that the baby was his? *Page 401 
 "A He said when I find out after the baby is born and we have a blood test or anything and she's mine I'll give her my name."
The question was put to the witness by the defendant, on cross-examination. The answer simply stated what the defendant had told the witness. No motion to exclude or any other objection was made to the answer given to the question. There is no ruling by the trial court for us to review.
The defendant also argues that there was insufficient evidence to support the jury's verdict. Again, we disagree. There was evidence from which the jury could reasonably have concluded that the defendant was the father of the child involved. The paternity statute, Title 27, § 12 (1)-(9), provides a procedure for establishing the paternity of a child. One of its purposes is to make provision for children born out of wedlock. Moore v. LeFlore, 288 Ala. 315, 260 So.2d 585
(1972). Although the statute requires the state to prosecute proceedings brought under the act, the proceeding itself is of a civil nature. A verdict that the defendant is the father of the child subjects the defendant to all of the obligations for the care, maintenance and education of the child as are imposed upon fathers of legitimate children. The measure of proof required to establish paternity is the same as in any civil case. The trial court correctly charged the jury that:
 "The measure of proof required in this case is to your reasonable satisfaction from the evidence. . . .
 ". . . [T]he burden of proof is upon the State to reasonably satisfy you from all the evidence in the case that Jeffery [sic] Mac Keener was the father of that child or is the father of that child . . . that's the only issue that you're trying . . ."
The state offered evidence which, if believed, was sufficient to establish that the defendant was the father of the child involved. We find no error to reverse.
The judgment appealed from is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, FAULKNER and BEATTY, JJ., concur. *Page 524