When children have children, out of wedlock, it presents tremendous social problems.[1] This case presents one of those problems, viz., who should pay for an unwed minor's expenses of pregnancy and confinement? The majority, finding that the expenses were "necessary," holds that the father of the unwed minor mother must pay for them. I cannot accept this as being either the legal, or the equitable, solution to the problem.
In my opinion, because these expenses were incurred by the unwed minor mother during her confinement for the delivery of an illegitimate child, the law applicable to illegitimate children should be applied; if that law is applied, I submit, these admittedly "necessary" expenses must be paid either by the father of the illegitimate child, by the unwed minor mother who contracted for them, or by "the public authority chargeable by law with support of the child." Alabama's Uniform Parentage Act (Ala. Code 1975, §§ 26-17-1 to 26-17-21).
I recognize that the law imposes on a father both a legal and a moral obligation to care for his minor children, and that in the ordinary case a father can be required to pay for "necessaries" that are furnished to his minor children, but that principle of law should not be applied to the facts of this case.
The central, material fact in this legal controversy is that these "necessaries" involve the birth of a child to an unwed minor mother, and the law specifically provides who has the burden of bearing the expenses of the minor mother's pregnancy and confinement. This burden is not on the shoulders of the illegitimate's maternal grandfather!
Alabama is a common law state, Ala. Code 1975, § 1-3-1, and, at the common law, even the father of an illegitimate child was not responsible for such expenses. See, generally, 10 C.J.S.Bastards § 18 (1938). This illogical rule of the common law, of course, has been replaced by statute in Alabama, and Alabama, like many other jurisdictions, now provides specifically for the manner of establishing the paternity of children born to unwed mothers and provides a method for creditors like the University of South Alabama to enforce payment of expenses incurred by the unwed mother during her pregnancy and confinement. It does not include the remedy allowed by the majority.
As I have already pointed out, the question in this case is not whether the reasonable expenses of this unwed mother's pregnancy and confinement were "necessary." *Page 540 
That is admitted. The question is: Who should pay them?
It is my opinion that Alabama law now places, and always has placed, the responsibility for the support and maintenance of an illegitimate child on the natural father.
By statute, in Alabama, the duty of a father to support his illegitimate child was previously established through proceedings commonly denominated as "bastardy" proceedings, which were neither strictly civil nor strictly criminal in nature, but quasi-criminal. Hunter v. State, 293 Ala. 226,301 So.2d 541 (1974). An adjudication of paternity was required in order to place any duty of support upon a father, of course, but paternity could be proven by a formal adjudication or by a father's public acknowledgement. Turner v. State, 39 Ala. App. 527, 104 So.2d 775 (1958). A judicial determination that the defendant was the father of the child subjected him to all of the obligations for the care, maintenance, and education of the child as the law imposed upon fathers of legitimate children.Keener v. State, 347 So.2d 398 (Ala. 1977).
Because the illegitimate child in this case was born on July 18, 1986, this case, in my opinion, is controlled by the provisions of the Alabama Uniform Parentage Act (Ala. Code 1975, §§ 26-17-1 to 26-17-21).
The Alabama Uniform Parentage Act is remedial legislation and was specifically designed to cure some of the defects that existed in the predecessor statutes. Ritter v. State,494 So.2d 76 (Ala.Civ.App. 1986). Because it is remedial legislation, I would apply to it the statutory construction that should be accorded to remedial legislation, that is, the Act should be construed liberally to effectuate its purpose. Ex parte Burks,487 So.2d 905 (Ala. 1985), on remand, Burks v. Phyfer,487 So.2d 908 (Ala.Civ.App. 1986).
As I read the provisions of Alabama's Uniform Parentage Act, there is a specific method available not only to determine the paternity of this child, but to fasten responsibility on the shoulders of the natural father, who is the one the law saysbears the responsibility.
Section 26-17-6 provides:
 "(a) A child, a child's natural mother, or a man presumed to be its father under subdivision (1), (2), or (3) of section 26-17-5(a), may bring an action within five years of the birth of said child for the purpose of declaring the existence of the father and child relationship presumed under subdivision (1), (2), or (3) of section 26-17-5(a); or
 "(b) Any interested party may bring an action at any time for the purpose of determining the existence or non-existence of the father and child relationship presumed under subdivision (4) or (5) of section 26-17-5(a).
 "(c) An action to determine the existence of the father and child relationship with respect to a child who has no presumed father under section 26-17-5 may be brought by the child, the mother, or personal representative of the child, the public authority chargeable by law with support of the child, the personal representative or a parent of the mother if the mother has died, a man alleged or alleging himself to be the father, or the personal representative, or a parent of the alleged father if the alleged father has died or is a minor.
 "(d) If an action under this section is brought before the birth of the child, all proceedings shall be stayed until after the birth, except service of process and the taking of depositions to perpetuate testimony.
 "(e) If the child has been adopted, an action may not be brought. (Acts 1984, No. 84-244, p. 375, § 6.)" (Emphasis added.)
As I read this Act, the mother of the child, the Department of Human Resources, or certain others may bring an action to determine paternity, and, once paternity is established in such an action, the court may order the father to pay the reasonable expenses of the mother's pregnancy and confinement. Section26-17-14 provides: *Page 541 
 "(a) The order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes. Upon paternity being established, the court shall immediately determine support payments at the conclusion of the paternity hearing and make support payment determination a part of the order establishing paternity.
"* * * *
 "(d) The order may contain any other provision directed against the appropriate party to the proceeding, concerning the duty of support, the custody of the child or the furnishing of bond or other security for payment under the order. The order may direct the father to pay the reasonable expenses of the mother's pregnancy and confinement." (Emphasis added.)
Construing the Act in its entirety, and cognizant of its overall purpose, I can conclude only that the unwed minor mother and the Department of Human Resources could have brought an action to determine the existence or non-existence of the father and child relationship and that the University of South Alabama Medical Center Hospital could have intervened to enforce its rights once paternity was established. The language of Alabama's Act is substantially similar to that of the uniform act proposed by Professor Krause in his article at 44 Tex.L.Rev. 829, which provided that paternity actions could be enforced "by other persons including private agencies to the extent that they have furnished the reasonable expenses ofpregnancy, confinement, education, necessary support, or funeral expenses." 44 Tex.L.Rev. 837 (1966). (Emphasis added.) Alabama's Act states in the enforcement section that once paternity is established, the determination of paternity can be enforced by "any other person, including a private agency, to the extent that these expenses have been or are being furnished." Ala. Code 1975, § 26-17-15(a). (Emphasis added.)
The Supreme Court of Wisconsin, when faced with the question facing us, concluded that the father of an illegitimate child can be held responsible for the medical expenses of the mother's pregnancy, stating: "The public policy underlying these paternity statutes is that the father of the infant should bear responsibility for expenses incurred as a result of a pregnancy in which he participated." Madison General Hospitalv. Haack, 124 Wis.2d 398, 369 N.W.2d 663, 664 (1985).
The Department of Human Resources, in an amicus brief, argues:
 "The Alabama Department of Human Resources services over 200,000 children for whom support is being sought in Alabama pursuant to Title IV-D of the Social Security Act. In Alabama, this support includes medical support. . . . Many thousands of children throughout Alabama desperately need medical support from their absent parents, and, through the Department's services, rely upon the courts of Alabama to see that their parents provide the support. Many of the absent parents, like Mr. Patterson, have gone many years without paying support, without maintaining contact with their children, and without making themselves knowledgeable as to the specific needs of their children, medical or otherwise. Under the holding of the Alabama Court of Civil Appeals as it now stands, the argument could clearly be made that an absent parent, by avoiding contact with the child for five years or more, may avoid responsibility for vital medical services which, though admittedly necessary to the child's health and welfare, are made not 'necessaries' by the absent parent's 'remoteness' from the child."
I agree with the Department that there is a tremendous problem in providing support for many children in the state, and I would agree with the argument of the Department that a natural father should not be able to avoid his responsibility to pay reasonable medical expenses for his minor child. I do not believe, however, that a father is legally responsible for the medical expenses connected with his minor daughter's pregnancy and confinement. The common law did not saddle him with these expenses and neither do our statutes. Nevertheless, there is a statutory method *Page 542 
available to the Department to place these on the person the law says is responsible, the father of the child born to the unwed minor mother.
It appears to me that Alabama's Uniform Parentage Act is broad enough to permit the Department to obtain an adjudication of the parent and child relationship and then request the court to order the actual father of the child to pay for the reasonable expenses of the pregnancy and confinement. Ala. Code 1975, § 26-17-6(c).
In fact, I am convinced that the mother of this illegitimate child may be responsible also for the expenses of her pregnancy and confinement. In Ex parte Odem, 537 So.2d 919 (Ala. 1988), this Court held that "medical services provided an infant childof a minor are 'necessaries' for which the minor parent may beobligated to pay." (Emphasis added.) In that case the unwed minor parent contracted for the medical services rendered to her child, and I cannot distinguish that case from this one insofar as legal principles are concerned.
I believe, under the facts of this case, that the expenses incurred by the minor mother in connection with her pregnancy and confinement, although "necessaries" insofar as the unwed minor mother is concerned, are not "necessaries" for which thefather of the unwed minor mother could be held legally responsible.
I do not address when and under what other circumstances the father of a minor child could be legally liable for reasonable medical expenses of his own minor child. I think the majority may be correct in holding that a father can be liable for "necessaries" even though he is divorced and does not have custody of the child, but I do not think he is liable here. This minor was pregnant and bore a child; I do not feel, under these facts, that the law places the legal responsibility on her father to pay the expenses of her pregnancy and confinement. Using the reasoning of the majority, I ask one last question: If the father of the illegitimate child is also a minor, why would not his parents be responsible also?
Consequently, I must respectfully dissent.
[1] Unquestionably, the problem of illegitimacy is a major problem not only in Alabama, but in the entire country, and during the past two decades, the United States Supreme Court and the National Conference of Commissioners on Uniform State Laws have addressed the problem through Court decisions and the drafting of a model act, respectively.
The Uniform Parentage Act (1973), which has been substantially adopted in Alabama (Ala. Code 1975, §§ 26-17-1 to26-17-21), had its genesis in an article entitled "Bringing the Bastard into the Great Society — a Proposed Uniform Act in Legitimacy," 44 Tex.L.Rev. 829 (1966), written by Professor Harry D. Krause, College of Law, University of Illinois. In a forward to that article, the editors of the law review stated the following:
 "Our nation recently has been directed toward a comprehensive assault on poverty. One aspect of the poverty problem is illegitimacy, and, unfortunately, the laws of illegitimacy in the United States are inadequate. Within the states there has been little concern with the total ramifications of bastardy: The courts have proceeded in an uneven fashion from common-law principles which were strongly influenced by ancient moral taboos, and the legislatures have failed to provide a full-scale statutory treatment. Among the states there is little uniformity and, because of our fantastic population mobility, this lack of uniformity has created a conflict of laws problem which is especially acute in this area. A third major fault is the failure of the laws to protect the interest of the true victim of illegitimacy — the child. In order to initiate the discourse and action necessary for the resolution of these problems of illegitimacy, Professor Krause has undertaken a difficult task, that is, to draft a uniform act which is sufficiently broad to handle the major substantive issues while, at the same time, sufficiently basic and eclectic to appeal to the majority of states."
44 Tex.L.Rev. 829.