810 So.2d 692 (1999)
C.V.
v.
J.M.J. and T.F.J.
(In re Baby Boy G.)
2970889.
Court of Civil Appeals of Alabama.
February 12, 1999.
Opinion on Denial of Rehearing April 30, 1999.
*693 Martha Jane Patton, Birmingham, for appellant.
K. Scott Stapp of Manley, Traeger, Perry & Stapp, Demopolis; Anthony B. Marchese, Tampa, Florida; and Bryant A. Whitmire, Jr., of Whitmire & Coleman, Birmingham, for appellees.
Karen N. Dice, Tuscaloosa, guardian ad litem.
BEATTY, Retired Justice.
C.V. is the biological father of Baby Boy G., a child born out of wedlock. J.M.J. and T.F.J. are the prospective adoptive parents of Baby Boy G., who was born on March 19, 1996, in Florida. On March 22, 1996, Adoption By Choice, Inc., placed Baby Boy G. with J.M.J. and T.F.J. for the purpose of final adoption.
This case has been before numerous courts in both Florida and Alabama, and it was before this court previously when C.V. petitioned for a writ of mandamus, see Ex parte C.V., 707 So.2d 249 (Ala.Civ.App. 1997); this court denied C.V.'s petition because we found C.V.'s argument to be moot after "the Florida court declined to exercise jurisdiction and deferred the matter to the Alabama court." 707 So.2d at 251.
C.V. now appeals from an order issued in April 1998 by the Tuscaloosa Juvenile Court. This 33-page order was a "Final Judgment" in a termination-of-parental-rights case filed in the juvenile court; that case had been consolidated with a petition filed in the circuit court seeking to have the Alabama courts give full faith and credit to an out-of-state order and with an adoption petition filed in the probate court. The order stated in part:
"IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:
"(1) The court finds from clear and convincing evidence that [C.V.'s] conduct as it relates to the minor child and to the birth mother prior to and after the child's birth constitutes abandonment as defined in the Alabama Adoption Code. Therefore, [C.V.'s] consent for the adoption *694 of Baby Boy [G.] is either implied or not required.
"(2) The Court finds from clear and convincing evidence that there is ample evidence to meet the two-pronged test set forth in Ex parte Beasley, [564 So.2d 950 (Ala. 1990) ], in order for the court to grant [J.M.J. and T.F.J.'s] petition to terminate [C.V.'s] parental rights. The court finds that the said minor child is dependent and that all viable alternatives to a termination of parental rights have been considered and excluded. Furthermore, the court finds that said termination of parental rights is consistent with the welfare and best interests of said minor child.
"(3) The court further finds from clear and convincing evidence that constitutional due process considerations on behalf of the minor child clearly dictate that [C.V.'s] parental rights should be terminated and the child permanently placed with [J.M.J. and T.F.J.].
"(4) Any and all of [the birth mother's] and [C.V.'s] parental rights with regard to Baby Boy [G.] are hereby forever terminated.
"(5) The petition for adoption filed by [J.M.J. and T.F.J.] is hereby granted. The child previously known as Baby Boy [G.] is hereby placed in the permanent care, custody and control of [J.M.J. and T.F.J.]. This order shall constitute a final order of adoption pursuant to the Alabama Adoption Code.
". . . .
"(8) Hon. Karen Dice is hereby awarded a fee for her services rendered and expenses incurred (including the costs of the genetics testing) as guardian ad litem in the amount of $9.850.00. Said fee is to be paid jointly and severally by petitioners [J.M.J. and T.F.J.] and respondent [C.V.]. A judgment is hereby awarded in favor of Karen Dice and against [J.M.J. and T.F.J. and C.V.], jointly and severally, in the amount of $9,850.00. The court further acknowledges its deep appreciation to Ms. Dice for her dedicated service in this matter."
C.V. contends that the trial court's judgment should be reversed because, he says, J.M.J. and T.F.J. failed to present evidence sufficient to meet their burden of proof and that the trial court's judgment in favor of J.M.J. and T.F.J. was plainly erroneous. C.V. also contends that the trial court committed reversible error when it awarded the guardian ad litem a fee in the amount of $9,850.
In its order, the trial court also stated:
"From the undisputed and the disputed evidence presented at trial, the court hereby makes the following findings of fact. It is significant to note at this point that the evidence regarding pertinent facts as presented by [C.V.] is almost exactly opposite from [the birth mother's] version of the facts about relevant incidents. In resolving the questions of disputed facts, the court has considered all relevant factors including, but not limited to, the motivations of the parties, the demeanor and presentation of the witnesses, and the ability or inability of the witnesses to recall with some degree of detail the various events."
The trial court further noted in its order that "[t]estimony and other evidence was presented to the court by way of live testimony of witnesses, videotaped testimony of witnesses, and various exhibits of documentary evidence submitted and allowed by the court." It is well settled that in a non-jury case it is the duty of the trial court to resolve conflicting testimony. M.A.M. v. M.C.P., 656 So.2d 1210 (Ala.Civ. App. 1995). In the present case, the trial court had an opportunity to watch all of the witnesses as they testifiedto observe *695 their demeanor and to draw conclusions from its observations. After reviewing the record before us, we cannot say that the judgment of the trial court is plainly and palpably wrong.
C.V. argues that the trial court committed reversible error when it found that C.V.'s consent was unnecessary because of his "implied consent" to the adoption of Baby Boy G. C.V. points out that the trial court relied upon his conduct before Baby Boy G. was born and that there are no Alabama cases which recognizing "prebirth abandonment." In its order, the trial court stated:
"1. [J.M.J. and T.F.J.] have argued that [C.V.'s] conduct constituted prebirth abandonment of Baby Boy [G.] which negates the requirement for his consent for adoption. They readily concede that the Alabama appellate courts have not yet addressed this issue in this context. They rely primarily on the Florida cases of In the Matter of Adoption of Doe, 543 So.2d 741 (Fla.1989), cert. denied, 493 U.S. 964, 110 S.Ct. 405, 107 L.Ed.2d 371 (1989); and In re Adoption of Baby E.A.W., 658 So.2d 961 (Fla. 1995), to support their position.
"2. C.V. argues that [neither] the Alabama legislature nor the courts have allowed the doctrine of pre-birth abandonment in adoption cases and that this court should not make new law in this case....
"3. After a careful review of the relevant adoption laws, the court can find nothing which would prevent consideration of [C.V.'s] pre-birth conduct in making a determination whether or not [C.V.] `abandoned' Baby Boy [G.] Furthermore, upon consideration and reflection of the Florida cases mentioned above, this court cannot find any reason whatsoever why the logic used by the Florida Supreme Court would not be applicable to Alabama adoption cases."
(Emphasis in original.)
In S.W.B. v. R.C., 668 So.2d 835, 836-37 (Ala.Civ.App.1995), this court stated:
"Under the Alabama Adoption Code, § 26-10A-1 et seq., Ala.Code 1975, consent or relinquishment of the adoptee is implied when the parents `knowingly [leave] the adoptee with others without provision for support and without communication' or when they `otherwise [do not maintain] a significant parental relationship with the adoptee for a period of six months.' § 26-10A-9(2), Ala.Code 1975. In short, the statute provides that relinquishment is implied when parents have knowingly abandoned their child. `Abandonment' is defined in the Code as
"`a voluntary and intentional relinquishment of the custody of a child by a parent, or a withholding from the child, without good cause or excuse, by the parent, of his presence, care, love, protection, maintenance or the opportunity for the display of filial affection, or the failure to claim the rights of a parent, or failure to perform the duties of a parent.'
" § 26-18-3(1), Ala.Code 1975. A trial court can terminate parental rights if it finds by clear and convincing evidence that the parents have, among other things, abandoned their children. M.H.S. v. State Dep't of Human Resources, 636 So.2d 419, 421 (Ala.Civ.App. 1994); § 26-18-7, Ala.Code 1975."
In In re Adoption of Doe, 543 So.2d 741, 746 (Fla. 1989), the Florida Supreme Court stated:
"The importance of prenatal care to the future mental and physical health of the child has long been recognized. The health or well-being of the child is a *696 continuum which extends back to the pregnancy of the mother: a child's good health does not magically begin at birth, it is powerfully affected by the nutrition and health care received by the mother during pregnancy.... Because prenatal care of the pregnant mother and unborn child is critical to the well-being of the child and of society, the biological father, wed or unwed, has a responsibility to provide support during the prebirth period....
"Prebirth conduct by an unwed father as it relates to the pregnant mother who needs the support of the father directly impacts upon the welfare of the child. The unwed pregnant mother who is unable to obtain needed support from the father is necessarily forced to take upon herself the entire responsibility for caring for the unborn child and for making necessary plans for the well-being of the child when born....
"In summary, the issue of abandonment turns on the question of whether the parent has evinced a settled purpose to assume parental duties. Providing prebirth support to the unborn child is a parental duty. Evidence of whether the parent has or has not furnished customary support to the pregnant mother is relevant to the issue of abandonment."
(Footnotes omitted.)
In In re Adoption of Baby E.A.W., 658 So.2d 961, 965 (Fla. 1995), the Florida Supreme Court "conclude[d] that a trial court, in making a determination of abandonment, may consider the lack of emotional support and/or emotional abuse by the father of the mother during her pregnancy."
As previously noted, C.V. contends that the trial court erred when it considered his conduct prior to Baby Boy G.'s birth because, he says, no Alabama cases recognize "prebirth abandonment." While C.V. is correct that there are no Alabama cases specifically addressing "prebirth abandonment," we do find that in S.W.B., 668 So.2d at 837, this court decided that a parent's "failure to perform the duties of a parent" constitutes abandonment. Thus, Alabama courts have previously found it proper to consider a parent's actions or inactions in determining whether that parent has abandoned his/her child. Therefore, we conclude that it was proper for the trial court to consider C.V.'s conduct before the birth of Baby Boy G. as it was relevant to the issue of abandonment. Moreover, we agree with the Florida court that "[p]roviding prebirth support to the unborn child is a parental duty." In re Adoption of Doe, 543 So.2d at 746.
In its order, the trial court stated, "the evidence regarding pertinent facts as presented by [C.V.] is almost exactly opposite from [the birth mother's] version of the facts about relevant incidents." However, both C.V. and the birth mother testified to the following: In February 1995, they began a sexual relationship; in July 1995, they discovered that she was pregnant; and in August 1995, they moved into an apartment together. In either September or October 1995, C.V. gave the birth mother a check so that she could obtain an abortion. The birth mother testified that she tore up the check; C.V. testified that he quickly took the check back because he did not want her to abort the baby. Both agree that before the child was born C.V. moved out of the apartment, taking with him virtually all of the furniture, except for some bedroom furniture. According to the birth mother, C.V. moved out in November 1995 and, when he left, took even the dishes, the eating utensils, the food, and the Christmas tree. According to C.V., the move occurred after the holidays and the birth mother asked him to remove all of his things from the apartment. The *697 birth mother testified that C.V. had very little contact with her after he moved out of the apartment. C.V. testified that he continued to spend time with the birth mother after he removed his belongings from the apartment and that he continued to give her his paycheck for living expenses.
According to the birth mother, C.V. contributed no money toward their living expenses, and she testified that the electricity and telephone service in the apartment were disconnected and that there were times when she went without food because there was none. C.V. testified that he gave her his paycheck each payday so that she could pay their living expenses.
It is undisputed that C.V. took no financial responsibility for his unborn childhe did not pay any of the birth mother's prenatal medical bills or the hospital bill, and he was not listed as the father when the birth mother applied for Medicaid benefits. The birth mother said that he had asked her not to list him on the application because he did not want anyone coming after him for reimbursement. According to the birth mother, C.V. did not accompany her on any of her prenatal doctor visits or to any of her Lamaze classes. However, C.V. testified that he was present when a sonogram was made.
The birth mother testified that C.V. physically abused her while she was pregnant. It is undisputed that on at least two occasions the law enforcement authorities were called after an altercation between C.V. and the birth mother and that in August 1995, C.V. was arrested for "battery on a pregnant woman" after the birth mother suffered a split lip and a dislocated shoulder.
In light of the foregoing, we conclude that the trial court had before it clear and convincing evidence that C.V. abandoned the birth mother physically, emotionally, and financially during her pregnancy with this child. C.V.'s failure to provide support is evidence of a prebirth abandonment of Baby Boy G. Consequently, C.V.'s consent to the adoption of Baby Boy G. is implied.
C.V. argues that the trial court committed reversible error in finding that Baby Boy G. was dependent and that all viable alternatives to the termination of parental rights had been considered and excluded. See Ex parte Beasley, 564 So.2d 950 (Ala. 1990). C.V. contends that the evidence does not support such a finding by the trial court. However, in S.W.B., 668 So.2d at 838, this court held "that in cases in which the biological parents have abandoned the child and the people with legal custody of the child seek to adopt the child, it is not necessary to determine whether the child is dependent and whether the trial court has alternatives less drastic than terminating the abandoning parents' rights."
C.V. also contends that the trial court committed reversible error when it awarded a guardian ad litem fee in the amount of $9,850 because, he maintains, such an award is manifestly unjust and punishes him for pursuing his rights. However, as our supreme court stated in Englund v. First National Bank of Birmingham, 381 So.2d 8, 12 (Ala. 1980), "The matter of the guardian ad litem's fee is within the discretion of the trial court, subject to correction only for abuse of discretion." The guardian ad litem filed an affidavit supporting her claim for attorney fees, with a "summary of activities" attached. This summary discloses that between January 1997 and April 1998 the guardian ad litem spent approximately 81.5 hours representing the interests of Baby Boy G. and that genetic testing cost $350. Thus, we find no abuse of discretion on the part of the trial court.
*698 Accordingly, the judgment must be, and it hereby is, affirmed.
The foregoing opinion was prepared by Sam A. Beatty, Retired Justice, Supreme Court of Alabama, while serving on active-duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
AFFIRMED.
ROBERTSON, P.J., and YATES, MONROE, and THOMPSON, JJ., concur.
CRAWLEY, J., dissents.
CRAWLEY, Judge, dissenting.
I must respectfully dissent from the adoption of the doctrine of pre-birth abandonment. After considering the issue in prior cases like D.C. v. CO., 721 So.2d 195 (Ala.Civ.App. 1998), and B.F. v. L.J., 771 So.2d 1029 (Ala.Civ.App. 1999), I have concluded that Alabama law simply does not permit a man's inaction prior to having proof of his paternity to serve as a basis for finding him unfit (D.C.) or concluding that he impliedly abandoned his child while establishing paternity or prior to the child's birth (B.F.). As I stated in my dissent in B.F., "[t]o abandon a child, a parent must have a right and an obligation to that child." B.F., 771 So.2d at 1032.
"In the past, the paternity of an illegitimate child was established by what was commonly called a `bastardy' proceeding. See Keener v. State, 347 So.2d 398 (Ala. 1977); see also Ex parte University of South Alabama, 541 So.2d 535, 540 (Ala. 1989) (Maddox, J., dissenting) (explaining that the law has always placed the responsibility for the maintenance and support of a minor child on the natural father of that child, once paternity was established). Once paternity was established in a such a proceeding, the father became subject to `all the obligations for the care, maintenance and education of the child as are imposed upon fathers of legitimate children.' Keener, 347 So.2d at 401. The reverse must also be true: until paternity is proven, a man is not subject to `all the obligations for the care, maintenance and education of the child as are imposed upon fathers of legitimate children.' Id. Our supreme court has stated that paternity must be established before a duty of support arises in the father. Ex parte State of California, 669 So.2d 884, 885 (Ala. 1995). Likewise, the other duties to a child incumbent upon a father do not arise until a man is proven to be the father.
"If a man has no duty to a child during the period before he is determined to be the father of that child, how can he fail to fulfill that duty by any action or inaction on his part? ... A man who has not yet been legally determined to be the father of a child, even if he is the putative father, is not a legal parent; he is not subject to `all the obligations for the care, maintenance and education of the child as are imposed upon fathers of legitimate children.' Keener, 347 So.2d at 401."
B.F., 771 So.2d at 1032.
In my opinion, C.V. had no duty to support his child before his paternity was established. See Ex parte State of California, 669 So.2d at 885. Therefore, he could not have impliedly abandoned the child by failing to provide support prior to the child's birth.
I recognize that not only Florida, but a number of other jurisdictions have accepted the doctrine of pre-birth abandonment.[1] However, many of those jurisdictions, *699 like Florida, have statutes specifically allowing abandonment to be decided on the basis of the father's prebirth conduct. See generally Comment, When Is a Biological Father Really a Dad? 24 Pepp. L.Rev. 959 (1997). The Alabama Adoption Code, §§ 26-10A-1 et seq., does not expressly allow the father's conduct before the birth of the child to be considered in determining the issue of abandonment. Moreover, the definition of "abandonment" in § 26-10A-2(1), Ala.Code 1975, would seem to preclude a consideration of the father's treatment of, or attitude toward, the unborn child. Section 26-10A-2(1) defines "abandonment" as:
"[a] voluntary and intentional relinquishment of the custody of a minor by [a] parent, or a withholding from the minor, without good cause or excuse, by the parent, of his presence, care, love, protection, maintenance, or the opportunity for the display of filial affection, or the failure to claim the rights of a parent, or the failure to perform the duties of a parent."
(Emphasis added.) A "minor" is "[a] person under the age of 19." § 26-10A-2(7), Ala.Code 1975. In view of the legal principle that an unborn child is not considered a "person," see, e.g., Roe v. Wade, 410 U.S. 113, 156-59, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), I do not see how the definition of "abandonment" in § 26-10A-2(1) can be expanded to include conduct that occurs before the birth of the child. In any event, this court is not the body to decide that the definition can, or should, be expanded. That decision is up to the legislature or the Alabama Supreme Court.
I would reverse the judgment of the trial court and hold that Alabama does not recognize pre-birth abandonment.

On Application for Rehearing
BEATTY, Retired Justice.
On application for rehearing, C.V. argues that his conduct toward the birth mother during her pregnancy is irrelevant on the issue whether he "abandoned" his son. To the contrary, we agree with the sentiment expressed by the Florida Supreme Court in In re Adoption of Doe, 543 So.2d 741, 746 (Fla.1989), a decision we relied upon in our opinion of February 12, 1999:
"Societal norms and [statutory law] contemplate that the natural parents will provide for the well-being of the child. When either or both fail to do so, the best interests of the child, and of society, require that society intercede, as in, for example, abandonment or adoption proceedings. Because prenatal care of the pregnant mother and unborn child is critical to the well-being of the child and of society, the biological father, wed or unwed, has a responsibility to provide support during the prebirth period. Respondent natural father's argument that *700 he has no parental responsibility prior to birth and that his failure to provide prebirth support is irrelevant to the issue of abandonment is not a norm that society is prepared to recognize. Such an argument is legally, morally, and socially indefensible."
At bottom, the basic issue here on the question of abandonment concerns relevancy. Is it relevant on the question of abandonment that before birth the putative father in a manner or form disclaims interest in the unborn child? If prior to birth he announces to a church congregation, e. g., that he will have nothing to do with such a child, would not such a fact be relevant on the issue of abandonment? Of course it would. We would consider such a disclaimer as relevant on that issue. Can we not also recognize indifference or neglect as relevant evidence on the same issue? Why not, when the only difference between the two is that one is express conduct and the other is implied? With either we have revealed the putative father's disposition toward the child, which is the crux of the question of abandonment, and thus we have evidence pertinent to the ultimate issue, i.e., what is best for the welfare of the child.
C.V. also argues that the issue of prebirth abandonment should be decided by the legislature, not by this court, and that our decision is contrary to public policy. In support of this argument, he incorrectly asserts that the Florida Supreme Court's decision adopting the doctrine of prebirth abandonment relied upon Fla. Stat. Ann. § 63.032(14) (West Supp.1997), which includes in its definition of "abandoned" a reference to the father's conduct toward the child's mother during her pregnancy. As the Florida Supreme Court stated in In re Adoption of Baby E.A.W., 658 So.2d 961 (Fla.1995), Florida courts first recognized the doctrine of prebirth abandonment in Doe, supra:
"When this Court decided Doe, chapter 63 did not include a definition of abandonment. The Court looked to section 39.01(1), Florida Statutes (1985), which defined abandonment in juvenile proceedings. The definition in Chapter 39 did not discuss a father's prebirth conduct, but the Doe Court nevertheless decided that such conduct is relevant because it `does tend to prove or disprove material facts bearing on abandonment.' [543 So.2d 741] at 746."
658 So.2d at 965-66 (emphasis supplied). Thus, contrary to C.V.'s argument, the doctrine of prebirth abandonment originated with the Florida judiciary and not with its legislature. Again, the ultimate legal issue is essentially one of relevancy, and our courts themselves are well suited to resolve that issue.
APPLICATION OVERRULED; RULE 39(k) MOTION DENIED.
ROBERTSON, P.J., and YATES, MONROE, and THOMPSON, JJ., concur.
CRAWLEY, J., dissents.
NOTES
[1] California: See Adoption of Michael H., 10 Cal.4th 1043, 898 P.2d 891, 43 Cal.Rptr.2d 445 (1995), cert. denied sub nom. Mark K. v. John S., 516 U.S. 1176, 116 S.Ct. 1272, 134 L.Ed.2d 219 (1996).

Minnesota: See In re C.M.A., 557 N.W.2d 353 (Minn.App. 1996).
New York: See Robert O. v. Russell K., 80 N.Y.2d 254, 604 N.E.2d 99, 590 N.Y.S.2d 37 (1992).
Nevada: See Matter of Carron, 114 Nev. 370, 956 P.2d 785 (1998).
Wisconsin: See In Interest of Baby Girl K., 113 Wis.2d 429, 335 N.W.2d 846 (1983).
In addition, the following additional states have adopted the Uniform Adoption Act: Arkansas, Louisiana, Montana, North Dakota, Ohio, and Oklahoma. Section 3-504 of the Act (9 U.L.A. 52) allows for a finding of prebirth abandonment based on the father's conduct during the mother's pregnancy. See Comment, When Is a Biological Father Really a Dad? 24 Pepp. L.Rev. 959 at nn. 128-32 (1997).