MADDOX, Justice
(dissenting).
I respectfully dissent. Because the majority does not issue an opinion explaining the factual and procedural background of this case, I will briefly set out the facts and then explain why those facts and my understanding of the law applicable to this case compel me to dissent.

I. Facts and Procedural History

In October 1996, L.C. (“the birth mother”), who was not married at the time, gave birth to the child that is the subject of this controversy. The birth mother and her parents decided to put the baby up for adoption and, through an intermediary, met L.J. (“the adoptive mother”). On October 27, 1996, L.J. drove from Birmingham to Montgomery, where she met with L.C. and L.C.’s family. L.C. and her family turned the child over to L.J. at that meeting. On October 29, three days after the child’s birth, the adoptive mother commenced an adoption proceeding in the Jefferson County Probate Court.
B.F., the putative father, did not learn of the child’s birth until October 29, the same day the adoptive mother commenced the adoption proceeding in the probate court. The child’s maternal grandmother contacted B.F. and requested his consent to the child’s adoption. B.F. refused to consent and asked that the birth mother withdraw her consent to the adoption. The birth mother refused to withdraw her consent, and B.F. filed an objection to the adoption on November 7,1996.
B.F. and his family visited the child at the adoptive mother’s home on December 6, 1996, but shortly thereafter the adoptive mother filed an amendment to her adoption papers in which she challenged B.F.’s standing to object to the adoption. The basis of that challenge was that B.F. had not yet established his paternity. B.F. then moved the trial court to order that blood be taken from the child for the purpose of establishing the paternity of the child. Subsequently, on its own motion, the probate court transferred the case to the Family Court of Jefferson County (“the family court”).[1]
*1034 The paternity tests were not completed for over nine months, but they eventually proved that B.F. was, in fact, the child’s father. During the period before he was proven to be the child’s father, B.F. and his family did not visit the child, although the evidence tends to show that L.J. had invited them to do so. B.F.’did not visit the child during that period because, he testified, he believed it might appear inappropriate for him to visit because the adoptive mother was a single woman. Further, B.F. testified, he did not visit because the adoptive mother was an attorney and he was concerned that anything he might say in front of her could possibly be “twist[ed].”
The family court conducted a hearing on the matter and concluded, under the provisions of § 26-10A-9(2), Ala. Code 1975, that B.F. had impliedly abandoned the child. Accordingly, the court entered a judgment granting the adoptive mother’s petition for adoption.
B.F. appealed. The Court of Civil Appeals affirmed, without an opinion. B.F. v. L.J., 771 So.2d 1029 (Ala.Civ.App.1999). Two of the judges of that court dissented, however; one of them, Judge Crawley, wrote a lengthy special opinion explaining the facts of the case and his reasons for dissenting. Judge Thompson concurred specially, on the ground that the trial court’s findings of fact should be sustained on appeal. Judge Thompson wrote that he believed the ore tenus rule applied and that the trial court’s determination that B.F. had impliedly consented to the adoption should be “accorded a presumption of correctness.” 771 So.2d at 1029. (Thompson, J., concurring specially.) Where evidence is presented to the trial court ore terms, a presumption of correctness exists as to the court’s conclusions on issues of fact and as to a judgment based on those findings of fact; its determination will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Gaston v. Ames, 514 So.2d 877, 878 (Ala.1987); Cougar Mining Co. v. Mineral Land & Mining Consultants, Inc., 392 So.2d 1177 (Ala.1981). However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court’s judgment. Griggs v. Driftwood Landing, Inc., 620 So.2d 582, 586 (Ala.1993); Gaston, 514 So.2d at 878; Smith v. Style Advertising, Inc., 470 So.2d 1194 (Ala.1985); League v. McDonald, 355 So.2d 695 (Ala.1978). Under Judge Crawley’s reasoning, see infra, the dispositive issue is a legal one, rather than a factual one.

II. Discussion

B.F. argues that this Court should reverse the judgment of the Court of Civil Appeals, and he states two grounds for a reversal. First, he relies on Rule 39(c)(3), Ala. RApp. P., asserting that his certiorari petition presents a question of first impression, namely:
“[Wjhether the Alabama Court of Civil Appeals erred in upholding the Trial Court’s decision that an eighteen year old unwed father, who after refusing to give his actual consent to the adoption of his three day old son, petitioned for custody of his child and objected to the adoption, can have his consent to the adoption implied under a literal interpretation of Section 26-10A-9(2), [Ala. Code 1975], on the basis that the father failed to visit the child for a six month period it took to legally confirm the father’s paternity, after the prospective adoptive parent challenged his paternity *1035 and legal standing, and the Courts of Jefferson County ordered paternity testing.”
This question is the one addressed by Judge Crawley in his dissent.
The second ground of B.F.’s petition is that the decision of the Court of Civil Appeals conflicts with this Court’s decision in Ex parte D.J., 645 So.2d 303 (Ala.1994), a case in which this Court considered the question, analogous to the question presented in this case, whether a child’s father had “ ‘relinquished custody to the mother.’ ” 645 So.2d at 306. In a unanimous decision, this Court in D.J. held that a person cannot waive a right of which he is unaware. 645 So.2d at 306.
I now discuss both interrelated grounds of B.F.’s petition and state the reasons why I conclude that the Court of Civil Appeals erred. It appears undisputed that the trial judge relied on the provisions of § 26-10A-9(2), Ala Code 1975,[2] as that statute read at the time of the trial proceedings, as authority for her holding that B.F. had relinquished his parental rights by impliedly consenting to the adoption.
Based on my review of the petition and the briefs of the parties, I believe the dispositive question may be phrased as follows: Whether a putative father, whose paternity of a child is being adjudicated, can be found, under the provisions of § 26-10A-9 to have impliedly consented to the adoption of the child, based on his action (or failure to act) during the period while the paternity of the child is being adjudicated.
Because the Court of Civil Appeals affirmed the judgment of the family court without writing an opinion, we do not know the reasons upon which that Court based its conclusion. In his special opinion, however, Judge Crawley explained his reasons for dissenting. He wrote:
“B.F. contends that he cannot be held to have impliedly consented to the adoption because of his failure to maintain a significant parental relationship with the child during the time he was establishing paternity. He argues that because he had not yet been adjudicated the father, he had no parental relationship with the child and, therefore, no rights or duties as to the child. B.F. timely took ah legal steps necessary to establish and to preserve the parent-child relationship by objecting to the adoption ip the first place and by participating in the paternity proceedings. In my opin-ibh, his actions in taking these steps show that B.F. did not abandon the child. irC-addition, I conclude, as B.F. argues, that he, as a putative father, could not have impliedly consented to the adoption by not exercising the rights or performing the duties of a parent because he was not yet proven to be the child’s father.”
B.F. v. L.J., 771 So.2d at 1031 (Crawley, J., dissenting) (emphasis added). Judge Crawley further wrote:
“In the past, the paternity of an illegitimate child was established by what was commonly called a ‘bastardy’ proceeding. See Keener v. State, 347 So.2d 398 (Ala.1977); see also Ex parte University of South Alabama, 541 So.2d 535, 540 (Ala.1989) (Maddox, J., dissenting) .... Once paternity was established in such a proceeding, the father became subject to ‘all the obligations for the care, maintenance and education of the child as are imposed upon fathers of legitimate children.’ Keener, 347 So.2d *1036 at 401. The reverse must also be true: until paternity is proven, a man is not subject to ‘all the obligations for the care, maintenance and education of the child as are imposed upon fathers of legitimate children.’ Id. Our supreme court has stated that paternity must be established before a duty of support arises in the father. Ex parte State of California, 669 So.2d 884, 885 (Ala.1995). Likewise, the other duties owed to a child by a father do not arise until a man is proven to be the father.”
771 So.2d at 1032 (Crawley, J., dissenting) (emphasis added).
. Judge Crawley concluded his special opinion as follows:
“Because of the legal principles discussed above, I conclude that the trial court misapplied the law to the facts of this case. A man who has not yet been determined to be the father of a child cannot impliedly abandon that child by failing to fulfill the duties of a parent. The trial court’s conclusion that B.F. impliedly abandoned his child is legally incorrect. I would reverse the trial court’s judgment.”
771 So.2d at 1032-33.
In his petition and in his brief, B.F. essentially adopts Judge Crawley’s reasoning, and he asks this Court to reverse on that basis. Based on the facts and circumstances of this case, I am persuaded that Judge Crawley correctly concluded that, as a matter of law, B.F. could not have impliedly relinquished his parental rights, because those rights did not yet exist under the law. In an analogous case, this Court unanimously held:
“ ‘Relinquishment’ is defined as ‘[a] forsaking, abandoning, renouncing or giving over a right.’ Black’s Law Dictionary 1161 (5th ed.1979). Voluntary relinquishment is thus essentially synonymous with the concept of ‘waiver,’ which has been defined as the ‘voluntary and intentional surrender or relinquishment of a known right.’ Dominex, Inc. v. Key, 456 So.2d 1047, 1058 (Ala.1984). By definition, therefore, a party ‘cannot waive a right of which he is unaware,’ Webb v. State, 539 So.2d 343, 353 (Ala.Crim.App.1987), and a fortiori, cannot waive or relinquish a right that does not exist.”
D.J., 645 So.2d at 306-07. (Emphasis omitted.)
Under the facts of this case, and under the law applicable to this ease, I conclude that the judgment of the Court of Civil Appeals is due to be reversed. Therefore, I dissent.

. In the record and the briefs of the parties, the trial court is referred to variously as the *1034 “Juvenile Court of Jefferson County,” the “Family Court of Jefferson County,” and the "District Court of Jefferson County, Alabama, Juvenile Division.” In 1967, the Legislature changed the name of the former "Juvenile and Domestic Relations Court of Jefferson County, Alabama, ... to ... the Family Court of Jefferson County, Alabama.” Act No. 674, Ala. Acts 1967 (Reg.Sess.).

. Section 26-1OA-9 has been amended since the trial court entered its judgment. At the time of the trial proceedings, however, it read as follows:
"A consent or relinquishment required by Section 26-10A-7 may be implied by any of the following acts of a parent:
[[Image here]]
"(2) Knowingly leaving the adoptee with others without provision for support and without communication, or not otherwise maintaining a significant parental relationship with the adoptee for a period of six months....”
Ala.Code 1975 (1992 Repl. vol. 15A). (Emphasis added.)