THOMPSON, Judge.
In January 1990, C.O. (the “mother”), gave birth to A.O. (the “child”). The mother and the child lived with the mother’s parents, B.O. (the “grandmother”) and L.O. Although the mother lived in the home, the grandparents reared the child and were the primary caregivers. In early 1997, when the child was 7 years old, the State Department of Human Resources, on behalf of the mother, brought a paternity and child support action against D.C., alleging that he was the father of the child. D.C. denied paternity. The trial court, after considering the results of D.N.A. testing, found D.C. to be the father and ordered that he pay $174 in monthly child support, commencing in May 1997.
D.C. paid one month’s child support and then petitioned for a change in custody in June 1997, when the mother, who had previously been convicted of possession of marijuana, was jailed for a probation violation. D.C. sought and received temporary custody of the child. The grandmother moved to intervene, seeking custody of the child. The trial court granted the grandmother’s motion to intervene and held a two-day trial. At the conclusion of the trial, the trial court found the mother unfit because of her admitted drug use, which included the use of marijuana and crack cocaine. The trial court also found the father unfit and awarded custody of the child to the grandmother. Only the father appeals.
The grandmother argues that the trial court found the child dependent and that this is a dependency case. However, the facts of this case do not support her assertion. None of the parties have alleged that the child is dependent. This is a custody dispute. Our supreme court set forth the standard that a trial court must apply to a custody dispute between a parent and non-parents in Ex parte Terry, 494 So.2d 628 (Ala.1986):
“ ‘The prima facie right of a natural parent to the custody of his of her child, as against the right of custody in a nonparent, is grounded in the common law concept that the primary parental right of custody is in the best interest and welfare of the child as a matter of law. So strong is this presumption, absent a showing of voluntary forfeiture of that right, that it can be overcome only be a finding, supported by competent evidence, that the parent seeking custody is guilty of... misconduct or neglect to a degree which renders that parent an unfit and improper person to be entrusted with the care and upbringing of the child in question. Hanlon v. Mooney, 407 So.2d 559 (Ala.1981).’ ”
Ex parte Terry, 494 So.2d at 632 (quoting Ex parte Mathews, 428 So.2d 58, 59 (Ala.1983)). This presumption in favor of the natural parent is not affected by the fact that the child was born out of wedlock. Ex parte D.J., 645 So.2d 303 (Ala.1994).
The trial court, in its order, found the father to be unfit, thus defeating the presumption in his favor afforded by Ex parte Terry. Although the father argues on appeal that the trial court’s award of custody to the grandmother was “not in the child’s best interests,” the true issue in this case is whether the trial court’s finding of the father’s unfitness is supported by clear and convincing evidence. Ex parte Berryhill, 410 So.2d 416, 417 (Ala.1982); Ex parte Terry, supra. We hold that it is, and we affirm.
The trial judge wrote a conscientious and thoughtful order that detailed the basis for his judgment. The portion of the trial *197 court’s order that is relevant to this appeal reads as follows:
“The Court finds abundant, clear, convincing, and competent evidence that the father is also unfit and/or unsuited for custody such that the best interest of the child will be served by granting custody to the maternal grandmother. Matters of child custody are subject to the sound discretion of the trial court, and such custody decisions, which are based on ore tenus evidence, will not be reversed on appeal except for abuse [of discretion] or plain error. Moore v. Foye, 646 So.2d 156 (Ala.Civ.App.1994). Therefore, this trial court is not required to articulate each and every factual basis upon which its decision is based.
“The following findings should not be misconstrued as the sole, exclusive factual basis of the Court’s decision, but rather as examples of some of the many factors which the Court considers in reaching its decision. The father (through counsel) repeatedly made the argument that the father had absolutely no knowledge (or even a reason to suspect) that the ‘one night stand’ had resulted in the pregnancy and subsequent birth of the child. He claims that he was never personally told of the mother’s pregnancy. He claims that he was never contacted by the mother in any manner advising him of the pregnancy or birth. He claims that the very first time that he had any idea whatsoever that he might be the father was when he got the ‘letter’ from DHR in October 1996. The Court simply does not believe that testimony.
“The father admitted that he heard rumors that it was his child. The mother testified that she informed the father of her pregnancy. She invited the father to her mother’s house to discuss it. The father came over with his uncle. They talked. The father said, ‘[W]e’ll talk about it and get back with you,’ but never did. In another conversation, according to the mother, the father agreed to take a blood test, but never did. He did not attend the birth of the child. He did not pay or offer to pay any of the hospital expenses. The Court chooses to believe the mother’s testimony to the effect that the father was notified that the child was his [child]. The father’s own admission that he heard rumors that the child was his is sufficient in the Court’s opinion to create reasonable suspicion or reason to urant to knoiv the truth.
“The father could have himself initiated a paternity action and demanded that the mother and child submit to a DNA test to determine the truth, but he did not want to know the truth. He deliberately chose to ignore the rumors. He made no effort to contact the mother or child for over seven (7) years. The father also said, ‘I’m not going to do a damn thing until I’m made to.’ If the mother had not initiated an action to determine paternity, the father would never have learned the truth. Upon being served with the paternity action, he denied paternity and demanded a DNA test. According to the mother’s testimony (which the Court believes), the father said, ‘the damn child is not mine.’ Even after the DNA test results were published, he said, ‘them tests are wrong.’
“During the first seven (7) years of the child’s life, the father made no financial, spiritual, moral, emotional, or physical contribution whatsoever into the child’s life. Only because of the child support order did the father make one payment of ONE HUNDRED SEVENTY-FOUR DOLLARS ($174.00). It is no coincidence that the father initiated this custody proceeding and requested that his child support payments cease immediately. A parent (in this case the father) who makes no financial, spiritual, emotional, moral or physical contribution into a child’s life for seven (7) years under the guise that he did not know it was his child, has clearly demonstrated to this Court that he is unfit and/or unsuited for custody. Again, the foregoing statements should not be misconstrued as the only basis for the Court’s decision, as many other factors were considered in reaching the decision of unfitness.”
(Some emphasis supplied.)
The trial court’s findings based upon conflicting ore tenus evidence are afforded a *198 presumption of correctness on appeal, and its judgment based on those findings will not be reversed unless it is so unsupported by the evidence as to be plainly and palpably wrong. I.M. v. J.P.F., 668 So.2d 843 (Ala.Civ.App.1995). The trial judge is in a unique position to view the witnesses and evaluate their credibility as the testimony and other evidence are presented; it is because of this unique ability to evaluate the credibility of witnesses that the trial court’s judgment based on the evidence is afforded a presumption of correctness on appeal. Ex parte Bryowsky, 676 So.2d 1322 (Ala.1996); Ex parte Murphy, 670 So.2d 51 (Ala.1995).
The trial court believed the mother’s testimony rather than the father’s testimony. In addition to admitting that throughout the years he had heard rumors that the child was his daughter, the father never denied that the mother told him that she was pregnant; he testified that he did not remember that conversation:
“THE COURT: Okay. Let me ask you some questions. There was some testimony from [the mother] that, after she realized she was pregnant, that she told you she was pregnant. You don’t remember any conversation like that?
“[THE FATHER]: No, sir.
“THE COURT: She related an event where she called you and an uncle to come over to her house. Do you remember any event like that?
“[THE FATHER]: No. I don’t remember (inaudible).
“THE COURT: You’re not saying that it could not have happened? You just don’t have a recollection of it?
“[THE FATHER]: No, sir.”
The very basis for the standard set forth in Ex parte Terry is the assumption that the child’s natural parent is the one who is most interested in the child’s welfare and proper upbringing and is the one who feels the most affection for the child.
“ ‘It is a fair presumption, that so long as children are under the control of their parents, they will be treated with affection, and their education and morals will be duly cared for....
“ ‘... So strong is the presumption that “the care which is prompted by the parental instinct, and responded to by filial affection, is most valuable of all”; and so great is the reluctance of the court to separate a child of tender years from those who according to the ordinary law of human nature, must feel the greatest affection for it, and take the deepest interest in its welfare — that the parental authority will not be interfered with, except in ease of gross misconduct or where, from some other cause, the parent wants either the capacity or the means for the proper nurture and training of the child.’ ”
Ex parte Terry, 494 So.2d at 631-32 (emphasis added) (quoting Ex parte Berryhill, 410 So.2d 416, 417 (Ala.1982)).
The trial judge specifically found that the father knew and has known throughout this child’s life that he is the child’s father. The trial court also specifically found that the father filed a petition for custody of this child in order to avoid making child support payments and that it was no coincidence that the father petitioned for custody ^almost immediately after being ordered to pay child support. The evidence in the record supports those findings of the trial court.
For over seven years, the father acted in a manner that clearly indicates that he had no interest in the welfare or upbringing of this child and that he had no natural affection for the child. The father’s actions have refuted the basic premise upon which Ex parte Terry is based: he is not one who in fact feels “the greatest affection for [the child], and take[s] the deepest interest in [the child’s] welfare.” 494 So.2d at 631. Although the father had no legally enforceable duty to support this child until a court determined his paternity and established his child support obligation, Williams v. State, 504 So.2d 282 (Ala.Civ.App.1986), and State ex rel. T.L.K v. T.K., 723 So.2d 69 (Ala.Civ.App.1998), the trial court clearly considered the father’s moral duty to provide support for his child. See McCall v. McCall, 596 So.2d 2 (Ala.Civ.App.1991). The father’s moral duty to support his child, and his failure to do so, *199 goes to the heart of the issue, i.e., the character and fitness of this man to parent this child. We cannot say that the trial court erred in basing its finding of unfitness, in part, on the father’s avoidance of his responsibility for this child. Certainly, a parent who avoids all parental responsibility rebuts the very basis for the Ex parte Terry standard and should not be afforded the benefit of that standard. The father is now married and has two sons and a stepson. The family of five lives in a two-bedroom home. When she is at her father’s house, the child sleeps in a bunk bed in the boys’ room, on a foldout couch in the living room, or in the father’s bed while the father and his wife sleep on the foldout couch.
The child has lived her entire life with the grandparents. The grandmother is the primary caretaker, and the grandfather participates actively in her education. The child testified in chambers regarding the living conditions at her father’s home and she expressed a preference to live with her grandparents.
We cannot say that the trial court erred in finding the father unfit and awarding custody to the grandparents. We affirm.
AFFIRMED.
ROBERTSON, P.J., concurs.
MONROE, J., concurs specially.
YATES, J., concurs in the result.
CRAWLEY, J. dissents.