CRAWLEY, Judge.
M.M.S. (the mother) appeals the juvenile court’s judgment adjudicating her 16-year-old son, D.M. (the child), dependent and placing him with her sister and brother-in-law, D.W. (the aunt) and R.W. (the uncle). The mother argues that this case is more in the nature of a custody case than a dependency case and that the Ex *1231 parte Terry[1] standard applies. We disagree. We have determined that this case is indeed a dependency case. Therefore, the juvenile court applied the correct standard and we affirm its judgment.
These family members have had a long history of close involvement with each other. The child was born in 1982. The mother had been married to the child’s father, R.S. (the biological father), and the couple divorced around the time the child was born. By a provision in the divorce judgment, R.S.’s parental rights were “terminated” so that C.M. (the maternal grandfather) could adopt the child. In fact, the grandfather did adopt the' child; however, the adoption wás set aside shortly thereafter because the mother realized that the adoption would also terminate her parental rights.
From the time the child was two weeks old until he was approximately five years old, he and the mother resided in the grandfather’s home. From the accounts of other family members, the grandfather and the grandmother were the parental figures in the child’s life. The mother moved out of the home when the child was around five years old. She testified that the child moved from the grandparents’ home to hers at that time; however, much of the testimony at trial indicated that the child continued to spend a majority of his time at the grandparents’ home.
The major dispute at trial was over which of the family members took the most responsibility for the child. The aunt testified that she and the grandmother took on the primary responsibility of ensuring that the child had transportation to school and that she attended all of the child’s extracurricular activities. According to the aunt and the child, the mother seldom attended the child’s extracurricular activities, and, if she did attend, she arrived very late. The aunt and the mother also testified about the mother’s “weather phobia,” which, according to the aunt, at times prevented the mother from taking the child to, or picking him up from, school.
In August 1997, the grandfather died. The child did not take his grandfather’s death well. The rest of the family also fared poorly after the grandfather’s death, because control of his multimillion-dollar company became an issue. The grandfather left 40% of his company to the mother, 40% to the aunt, and 20% to the child. The mother alleges that the true impetus behind the aunt’s petition is to gain control of the company, which the mother says the aunt wants sold. However, during the pendency of the dependency case, a con-servatorship was being instituted to protect the childs interests in the company. As a safeguard, the juvenile court, in its order on the dependency petition, ordered that the aunt and uncle create a conserva-torship to protect the child’s inheritance.
During the grandfather’s final illness and after his death, the child resided with his mother. In Decembér 1997, the mother remarried I.R.S'. (the stepfather), who, according to her family, had abused her both verbally and physically during their prior marriage. Around this same time, the child’s grades fell, he became habitually truant, and his behavior at home worsened. He refused to attend the wedding of his mother and the stepfather. Quite simply, the child would not accept his mother’s attempts to assert parental control over him; he would not do his homework, would not get up in a timely manner for school, and even became involved in vandalism.
The mother filed a “beyond control” petition against the child in January 1998, which resulted in a short-term placement of the child with his aunt and uncle. The mother successfully appealed[2] the finding *1232 of the referee in that case, and the child returned to the mother’s home on May 4, 1998. The following day, the child ran away. On May 6, the mother again filed a petition in the family court, alleging that the child was a runaway, and she also filed a complaint alleging that the child had harassed her. The aunt and uncle filed a dependency petition on May 7. On May 11, the juvenile court awarded temporary custody of the child to his aunt and uncle.
In their petition, the aunt and uncle alleged, among other things, that the child was being physically, mentally, and emotionally abused by the mother and the stepfather and that the mother was failing to provide the child a means to get to school. The mother attempts to argue that the evidence at trial does not support the allegations made by the aunt and uncle, and, therefore, that the juvenile court could not find the child dependent. However, contrary to the mother’s argument, the juvenile court can find a child dependent based upon grounds not asserted in the dependency petition. Martin v. State Dep’t of Human Resources, 502 So.2d 769, 770 (Ala.Civ.App.1987) (stating that this court did not need to “find that the Department proved the specific grounds alleged in the petitions because we [found] that the juvenile court had other sufficient grounds for determining that the children are dependent.”).
Ala.Code 1975, § 12-15-l(10)(m), provides that a child may be declared dependent if he is “for any other cause in need of the care and protection of the state.” This subsection has been held to give the court the authority to declare a child dependent under the totality of the circumstances. Martin, 502 So.2d at 771; see also Kennedy v. State Dep’t of Human Resources, 535 So.2d 168, 170 (Ala.Civ. App.1988). “Once a child is found to be dependent, the trial court is authorized to make any of a number of dispositions under Ala.Code 1975, §12-15-71....” MM. v. C.M., 600 So.2d 316, 318 (Ala.Civ.App.1992). The transfer of custody upon a finding of dependency is governed by the child’s best interests. Jones v. Webb, 524 So.2d 374, 374 (Ala.Civ.App.1988).
Although this case does indeed involve a custody dispute between squabbling family members, the evidence at trial indicated, in essence, that the child is dependent. The child was habitually truant, having missed 23 days in one “quarter” at school. He was failing his courses. He had vandalized a neighbor’s swimming pool.
The evidence indicates that the child did better when in his aunt’s care in April 1997, after the placement on the mother’s “beyond control” petition, and again in the months before the hearing on the dependency petition. While in the aunt’s care in late spring, the child missed only two days of school, once when he was ill and once when he went to a doctor. The child’s aunt had enrolled him in the Huntington Learning Center for the summer; he had been present every day, except for one day when he was ill; and he had applied himself and had maintained a “B” average. The aim of the summer program was to have him make up work he had failed during the earlier part of the year, and all indications at trial were that he would complete the necessary work. The child himself testified that he wanted to live with the aunt but that he would want to visit with his mother. He stated that he did not want to see his stepfather, who he accused of being abusive to his mother. He also said that his grandparents and his aunt and uncle had been his primary caregivers and that he had spent the majority of his time at their homes. According to the child, his aunt and uncle continued to provide care and guidance for him after the death of his grandfather.
The juvenile court also heard the conflicting testimony of two expert witnesses. Dr. Don Wendorf, the court-ordered psychologist, testified that the child would not be able to have a normal parent-child rela *1233 tionship with his mother because he had never considered her his parent. According to Dr. Wendorf, the child would be better served by placement with the aunt, in whose custody he had been placed temporarily and in whose custody his behavior had improved. The mother’s psychologist, Dr. Fletcher Hamilton, opined that the child needed to have rules and to learn to obey those rules. He commented that the members of the extended family, such as the aunt and grandmother, had undermined the mother’s attempts to assert parental authority. Dr. Hamilton recommended that the child be placed with the mother so that they could work on developing a proper relationship.
The juvenile court heard extensive testimony in this case, and its judgment is very thorough. The court comments in that judgment that the mother obviously loves the child, but it also points out that the mother had been dependent on her family to provide for the child’s care throughout most of his life. From comments made by the court in the record, it becomes apparent that it concluded that the mother’s recent attempts to stand on her own and to become the parental figure in the child’s life were too little, too late. After considering the totality of the circumstances in this case, we have determined that the juvenile court’s finding of dependency is supported by clear and convincing evidence, as required by Ala.Code 1975, § 12-15-65(f), and, based on the evidence presented, we agree that the juvenile court’s transfer of custody to the aunt and uncle is in the child’s best interest.
The judgment of the juvenile court is affirmed.
AFFIRMED.
YATES, MONROE, and THOMPSON, JJ., concur.
ROBERTSON, P.J., concurs in the result.

. 494 So.2d 628 (Ala.1986).

. We question why the mother would appeal a finding that the child was indeed "beyond control,” given that she filed the petition herself; however, she may have actually appeal *1232 ed the disposition/placement of the child with the aunt and uncle.