911 So.2d 1 (2004)
F.G.W.
v.
S.W. and D.W.
2030720.
Court of Civil Appeals of Alabama.
December 10, 2004.
Rehearing Denied January 14, 2005.
Certiorari Denied April 29, 2005.
*2 Michael Guy Holton, Pike Road; and Letitia Myers, Enterprise, for appellant.
J.E. Sawyer, Jr., Enterprise, for appellees.
Alabama Supreme Court 1040620.
YATES, Presiding Judge.
S.W. and D.W., the paternal grandparents, petitioned the Juvenile Court of Dale County on June 12, 2003, for custody of their grandsons, who were ages 12 and 8 at the time. The paternal grandparents alleged that the children were dependent and that they were "in immediate or threatened danger of physical and/or emotional harm in that: Mother is being investigated in child abuse case which resulted in death of 21 [month] old [daughter]."
Following a hearing on the dependency petitions, the juvenile court granted temporary custody of the children to the paternal grandparents. The court ordered the Department of Human Resources ("DHR") to conduct an evaluation of the grandparents' and the parents' houses. F.G.W., the children's mother, filed a motion to set aside the temporary-custody order or, in the alternative, to order visitation.[1] The juvenile court denied the mother's motion. The mother filed a "Motion To Reconsider Denial of Pendente [Lite] Visitation." Subsequently, the mother filed a motion requesting that the case be transferred to the Juvenile Court of Coffee County; that motion was granted. The Coffee Juvenile Court ordered that all temporary orders entered by the Dale Juvenile Court remain in effect pending further orders of the court.
On December 18, 2003, the mother filed a motion asking the court to set aside the Dale Juvenile Court's order awarding the paternal grandparents temporary custody. On January 9, 2004, the juvenile court denied the mother's motion for reconsideration of visitation and the mother's motion to set aside the temporary-custody order.
A final hearing was held on March 5, 2004. The testimony at the hearing indicates that the police had been called to the mother and father's house on several occasions. On one occasion, the mother was arrested for threatening the father with a gun, but that charge was later dismissed. The mother and the father have initiated divorce proceedings several times in the past, and currently there is a divorce proceeding pending. The mother originally *3 believed that a man with whom she was having an affair had fathered the daughter until paternity tests showed that the daughter was biologically related to the father.
On the day that the daughter died, the mother left her two sons at home alone and she left the daughter with the mother's paramour while she went shopping and to a McDonald's, a fast-food restaurant. She had left the daughter with her paramour in the past. The mother stated that the daughter died from injuries suffered from having her head placed in a ceiling fan while the fan was set on its highest setting and then having her head "knocked" into the side of a dresser by the mother's paramour. The mother admitted that she originally believed that the daughter had merely fallen. The mother stated that she is scheduled to testify against her paramour in an upcoming criminal trial. However, she admitted that her paramour has accused her of killing the daughter. A letter from the district attorney indicated that he no longer considered the mother a suspect in the daughter's death. However, the mother admitted that DHR's child-abuse report of the incident that caused the daughter's death was marked as "indicated" and that DHR has listed her on its child-abuse registry.
The juvenile court found both sons to be dependent as defined by § 12-15-1(10), Ala.Code 1975, and it awarded custody of the sons to the paternal grandparents; it denied all other pending motions. The mother appeals.
The mother argues that the trial court abused its discretion in determining that her sons were dependent because, she alleges, the children did not meet any of the definitions of a dependent child provided in § 12-15-1(10). In essence, she argues that the case is more in the nature of a custody case than a determination-of-dependency case. The mother also argues that the trial court abused its discretion in awarding custody to the paternal grandparents because, she argues, as a natural parent, she has a prima facie right to custody of the children and the trial court did not find her to be unfit.
In O.L.D. v. J.C., 769 So.2d 299, 302 (Ala.Civ.App.1999), this court stated:
"The father appeals from the order denying him custody. He argues that the evidence did not establish that he was unfit and, or guilty of such misconduct or neglect as would overcome the presumption afforded to him by [Ex parte] Terry [, 494 So.2d 628 (Ala.1986)]. This case is not simply a custody dispute between a parent and nonparent, but, rather, is a dependency case; therefore, Terry is not applicable. See Anonymous v. Anonymous, 504 So.2d 289 (Ala. Civ.App.1986). The grandparents' petition alleged that the child was a `dependent child,' within the meaning of that term as defined in § 12-15-1(10)(c), Ala. Code 1975. `"When the petitioners alleged that the child was dependent, that terminology triggered the trial court to utilize the dependency statutes of the juvenile code."' W.T. v. State Dep't of Human Resources, 707 So.2d 647, 650 (Ala.Civ.App.1997), quoting C.P. v. M.K., 667 So.2d 1357, 1360 (Ala.Civ.App.1994) (Thigpen, J., specially concurring in part and dissenting in part). Upon finding a child to be `dependent,' the court may make any order of disposition necessary to protect the welfare of the child, including transferring legal custody of the child to a relative. § 12-15-71(a)(3)c., Ala.Code 1975; Jones v. Webb, 524 So.2d 374 (Ala.Civ.App.1988). This court held in W.T. that the parental presumption set forth in Ex parte Terry and Ex parte D.J. [, 645 So.2d 303 (Ala.1994),] is not applicable in the dispositional phase of a *4 dependency proceeding under § 12-15-71(a). W.T., supra. The appropriate standard to be applied in the dispositional phase of a dependency proceeding is the `best interests of the child' standard. Id. See also Jones, supra, and D.K.G. v. J.H., 627 So.2d 937 (Ala.Civ.App.1993). Further, there is no requirement that the court find a parent unfit when dependency is found and custody is placed with a relative to protect the welfare of the child. W.T., supra."
The juvenile court, in finding the children dependent, did not specify which subsection of § 12-15-1(10) applied to the children. The paternal grandparents argue that the children could be found dependent under any of the following provisions of § 12-15-1(10), defining a dependent child as a child:
"d. Whose home, by reason of neglect, cruelty, or depravity on the part of the parent, parents, guardian, or other person in whose care the child may be, is an unfit and improper place for the child; or
". . . .
"f. Who is in a condition or surroundings or is under improper or insufficient guardianship or control as to endanger the morals, health, or general welfare of the child; or
". . . .
"j. Who is physically, mentally, or emotionally abused by the child's parents, guardian, or other custodian or who is without proper parental care and control necessary for the child's well-being because of the faults or habits of the child's parents, guardian, or other custodian or their neglect or refusal, when able to do so, to provide them."
Certainly, leaving a child in an abusive environment would meet any of the definitions of a dependent child listed above, and it is undisputed that the mother left the daughter in such an environment. However, the evidence does not indicate that the mother left the sons in that environment, and there was no evidence presented that the sons were ever around the paramour. Nevertheless, the juvenile court could have found the sons to be dependent under § 12-15-1(10)(m). This court has held:
"Ala.Code 1975, § 12-15-1(10)(m), provides that a child may be declared dependent if he is `for any other cause in need of the care and protection of the state.' This subsection has been held to give the court the authority to declare a child dependent under the totality of the circumstances. Martin [v. State Dep't of Human Resources,] 502 So.2d [769,] 771 [(Ala.Civ.App.1987)]; see also Kennedy v. State Dep't of Human Resources, 535 So.2d 168, 170 (Ala.Civ.App. 1988). `Once a child is found to be dependent, the trial court is authorized to make any of a number of dispositions under Ala.Code 1975, § 12-15-71....' M.M. v. C.M., 600 So.2d 316, 318 (Ala. Civ.App.1992). The transfer of custody upon a finding of dependency is governed by the child's best interests. Jones v. Webb, 524 So.2d 374, 374 (Ala. Civ.App.1988)."
M.M.S. v. D.W., 735 So.2d 1230, 1232 (Ala. Civ.App.1999).
In the present case, the mother and the father had had several incidents where the police had been called to their house. On one occasion, the mother had threatened the father with a gun. The evidence indicated that the sons had been left alone and unsupervised while the mother conducted her affair; that relationship continued for a significant amount of time. Although the district attorney no longer considered the mother a suspect in the daughter's death, the mother admitted that her paramour had accused her of harming the daughter. After considering *5 the totality of the circumstances, including the mother's failure to protect the daughter and her leaving the sons unsupervised, coupled with the mother and the father's turbulent past, we conclude that the juvenile court's finding of dependency is supported by clear and convincing evidence.
The mother also argues that the juvenile court erred in giving custody to the paternal grandparents because the court did not find her to be unfit. A parent does not have to be found unfit when a child is determined to be dependent and custody is placed with a relative to protect the welfare of the child. Matters of dependency and child custody are within the discretion of the trial court. Where ore tenus evidence is presented, the judgment of the trial court is presumed correct and will be reversed on appeal only upon a showing that it was plainly and palpably wrong. R.G. v. Calhoun County Dep't of Human Res., 716 So.2d 219 (Ala.Civ.App.1998)(citing G.C. v. G.D., 712 So.2d 1091 (Ala.Civ.App.1997)). A judgment of dependency and the subsequent transfer of custody are provided for in § 12-15-71, Ala.Code 1975, and are governed by the best interests of the child. Jones v. Webb, 524 So.2d 374 (Ala.Civ.App. 1988). Accordingly, the juvenile court did not have to find the mother unfit in order to award the paternal grandparents custody of the children.
The mother is correct that the common-law presumption is that a child's best interests are served by entrusting its care and custody to the natural parents. See Ex parte D.J., 645 So.2d 303 (Ala.1994); N.G. v. L.A., 790 So.2d 262 (Ala.Civ.App. 2000). This presumptive right can be overcome only by a finding that a parent is unfit. Ex parte Terry, 494 So.2d 628 (Ala. 1986). However, if a parent has voluntarily forfeited custody, or the trial court has removed custody from the parent to a nonparent, the presumption favoring the parent does not exist. Id.[2]
The judgment of the juvenile court is affirmed.
AFFIRMED.
PITTMAN, J., concurs.
THOMPSON, J., concurs in the result, without writing.
CRAWLEY and MURDOCK, JJ., dissent, with writings.
CRAWLEY, Judge, dissenting.
Although what happened to the daughter of F.G.W. ("the mother") in this case was horrible and tragic, the evidence adduced at the dependency hearing simply fails to prove that the mother had any knowledge that her paramour would not be a proper person to entrust her daughter to during a visit to the store and while running an errand to purchase dinner at a fast-food restaurant. The mother had a long-standing relationship with her paramour, who she clearly trusted to care for her daughter. In fact, the mother testified that her paramour's young son was present on the day she left the daughter with the paramour and that the paramour had requested to be allowed to spend some time with the daughter. In my view, the tragic outcome of the mother's otherwise sound decision to leave her child with a *6 known adult who was responsible based upon all the information that the mother had is simply insufficient, on its own, to amount to clear and convincing evidence that the mother's sons are dependent because of her decision.
The mother also left her sons unsupervised on the day she left her daughter in the care of her paramour. Her sons were approximately 12 and 8 years old at the time. The record does not reveal the length of time the sons were left unsupervised. According to the testimony concerning the sons, neither son has had any behavioral problems. The older son is described as a good student, while the younger son is described as an average student. Leaving a preteen son and his younger brother home alone is perhaps not the best choice a parent can make; however, in light of the dearth of evidence concerning the length of time the sons were home alone or other evidence indicating that leaving the sons home alone at their ages exposed them to significant danger, I cannot use that fact as a basis for determining them to be dependent children.
I would reverse the judgment of the juvenile court.
MURDOCK, Judge, dissenting.
The main opinion indicates that a parent does not have to be found unfit in order for his or her child to be found dependent and, further, that a judgment of dependency may be based upon the "best interests" of the child:
"A parent does not have to be found unfit when a child is determined to be dependent and custody is placed with a relative to protect the welfare of the child.... A judgment of dependency and the subsequent transfer of custody are provided for in § 12-15-71, Ala. Code 1975, and are governed by the best interests of the child. Jones v. Webb. 524 So.2d 374 (Ala.Civ.App.1988)."
911 So.2d at 4.
It is true that § 12-15-1(10), Ala.Code 1975, contains some subsections that define a dependent child in such a way as to avoid the need for a showing of parental unfitness. Subsections a. and b., among others, appear to anticipate situations where no parent is involved in the child's life, however. Where a parent is involved in a child's life, however, those and other subsections in § 12-15-1(10) arguably contemplate a finding of parental unfitness, abandonment, or some other concern rising to the level of a compelling state interest before a child can be found to be dependent. Such an understanding of § 12-15-1(10) and its various definitions of a dependent child would be consistent with well-established state-law principles applicable to custody cases generally, see Ex parte Terry, 494 So.2d 628 (Ala.1986); Ex parte McLendon, 455 So.2d 863 (Ala.1984); R.K. v. R.J., 843 So.2d 774 (Ala.Civ.App.2002); C.P. v. W.M., 837 So.2d 860 (Ala.Civ.App.2002); and D.C. v. C.O., 721 So.2d 195 (Ala.Civ. App.1998), and with applicable federal constitutional principles, see R.K., 843 So.2d at 780-82; L.B.S. v. L.M.S., 826 So.2d 178, 188 (Ala.Civ.App.2002) (Murdock, J., concurring in the judgment of reversal only); and D.M.P. v. State Dep't of Human Res., 871 So.2d 77 (Ala.Civ.App.2003) (plurality opinion) (discussing and quoting from Roe v. Conn, 417 F.Supp. 769 (M.D.Ala.1976)); see also R.S.C. v. J.B.C., 812 So.2d 361, 367-72 (Ala.Civ.App.2001).[3]
*7 As for the statement in the main opinion that "[a] parent does not have to be found unfit when a child is determined to be dependent and custody is placed with a relative to protect the welfare of the child," 911 So.2d at 5, that statement can be traced to the special writing of Judge Thigpen in C.P. v. M.K., 667 So.2d 1357, 1359 (Ala.Civ.App.1994) (Thigpen, J., concurring specially in part and dissenting in part). This statement by Judge Thigpen was quoted with approval by the Court of Civil Appeals in W.T. v. State Department of Human Resources, 707 So.2d 647 (Ala. Civ.App.1997). In that case, however, dependency itself was not at issue. The trial court had found the child to be dependent in an earlier proceeding and had placed "temporary" custody of the child with a grandparent. In the subsequent "dispositional phase" of the dependency proceeding, both the father and the mother vied for custody of the child, both conceding for purposes of that proceeding that the child was dependent. The final dispositional hearing, therefore, was not, as it is in the present case, the final hearing as to the issue of dependency, combined with a dispositional determination, see § 12-15-65(f), but rather was purely a "dispositional phase" hearing under § 12-15-71. As noted in W.T., 707 So.2d at 649, "[t]he parental presumption set out in cases such as [Ex parte] Terry [, 494 So.2d 628 (Ala. 1986),] and [Ex parte] D.J. [, 645 So.2d 303 (Ala.1994),] does not apply ... in the dispositional phase of a dependency proceeding under § 12-15-71(a), Ala.Code 1975." (Emphasis added.) The hearing and resulting judgment from which F.G.W. appeals in the present case, however, was a combination of the adjudicatory phase and the dispositional phase of the dependency proceeding. The fact that a pendente lite transfer of custody occurred earlier in the case does not avoid the need for a finding of dependency under § 12-15-1. See Ex parte R.C.L., 627 So.2d 920 (Ala.1993). See also K.B. v. Cleburne County Dep't of Human Res., 897 So.2d 379, 389 (Ala.Civ. App.2004) (Murdock, J., concurring in the result) (citing § 12-15-65(d) and (f), § 12-15-71(a), and Phillips v. Alabama Dep't of Pensions & Sec., 394 So.2d 51, 52-53 (Ala. Civ.App.1981)).
The main opinion also states that "[m]atters of dependency and child custody are within the discretion of the trial court" and that "[a] judgment of dependency and the subsequent transfer of custody are provided for in § 12-15-71, Ala.Code 1975, and are governed by the best interests of the child." 911 So.2d at 6 (emphasis added).
Section 12-15-71 governs the dispositional phase of a dependency proceeding. Under that section, the disposition of a child found to be dependent is indeed governed by a "best interest" determination to be made in the "discretion" of the trial court. Indeed, § 12-15-71(a)(4) expressly authorizes a trial court to "[m]ake any other order as the court in its discretion shall deem to be for the welfare and best interests of the child." (Emphasis added.) See, e.g., Minchew v. Mobile County Dep't of Human Res., 504 So.2d 310 (Ala.Civ. *8 App.1987). The adjudicatory phase of a dependency proceeding, however, is not governed by § 12-15-71 or a discretionary, best-interest determination. In order to adjudicate a child dependent, a trial court must determine that one or more of the delineated standards imposed by § 12-15-1(10), which define dependency, is satisfied. Further, in conducting an appellate review of a trial court's determination in this regard, we must be able to conclude that the evidence supporting that determination was sufficient for a reasonable factfinder to consider it "clear and convincing." See § 12-15-65(f); M.M.S. v. D.W., 735 So.2d 1230, 1233 (Ala.Civ.App.1999).
The main opinion cites Ex parte D.J., 645 So.2d 303 (Ala.1994), N.G. v. L.A., 790 So.2d 262 (Ala.Civ.App.2000), and Ex parte Terry, 494 So.2d 628 (Ala.1986), all of which are custody cases, for the proposition that the common-law presumption that a child's best interests are served by entrusting its care and custody to the natural parents can be overcome only by a finding that a parent is unfit or has voluntarily forfeited custody of the child or that the trial court has removed custody from the parent to the nonparent. In this case, the parent has not voluntarily forfeited custody of the child. Nor is there a judgment removing custody from the parent to a nonparent so as to avoid a finding of unfitness. See Ex parte R.C.L., 627 So.2d at 921-22 (holding that a pendente lite transfer of custody, as occurred in the present case, is not sufficient to remove the custodial presumption favoring the parent). Applying the cited cases, the presumption in favor of the natural parent could be overcome in this case, therefore, only by a clear and convincing showing of unfitness.
Because I do not believe the record contains evidence from which the juvenile court reasonably could have found that dependency had been clearly and convincingly proven, I must respectfully dissent.
NOTES
[1] An attorney was originally appointed to represent the children's father. While the dependency petitions were pending, the father and the mother began divorce proceedings. The father did not seek custody of the children, and he now lives with the paternal grandparents.
[2] We note that the mother could seek visitation with the children. Further, the mother could also seek custody of the children in future proceedings if she could prove a material change of circumstances. Following the entry of a judgment transferring custody or a parent's voluntary forfeiture of custody of a child, a parent may not regain custody of the child without proving that such a custody modification would "materially promote" the child's welfare. Ex parte McLendon, 455 So.2d 863 (Ala.1984).
[3] The law does not allow a state to substitute its judgment for that of a parent as to what is in a child's best interest; there must be a problem such as parental unfitness, abandonment, or some other comparable concern rising to the level of a compelling state interest justifying judicial intervention in the fundamental parental right to the care, custody, and control of a child. See L.B.S., supra, and R.S.C., supra. In K.B. v. Cleburne County Dep't of Human Res., 897 So.2d 379, 389 (Ala.Civ.App.2004) (Murdock, J., concurring in the result), I noted that standards listed in § 12-15-1(10) "do in fact speak to the issue of parental unfitness, or in some cases neglect or abandonment, or other comparable problems giving rise to a compelling state interest in interfering with the natural parent/child relationship." Those standards appear no less stringent than the standards announced in Ex parte Terry, 494 So.2d 628 (Ala.1986), for rebutting the presumption in favor of a parent's right to the custody of his or her child.