YATES, Presiding Judge.
S.W. and D.W., the paternal grandparents, petitioned the Juvenile Court of Dale County on June 12, 2003, for custody of their grandsons, who were ages 12 and 8 at the time. The paternal grandparents alleged that the children were dependent and that they were “in immediate or threatened danger of physical and/or emotional harm in that: Mother is being investigated in child abuse case which resulted in death of 21 [month] old [daughter].”
Following a hearing on the dependency petitions, the juvenile court granted temporary custody of the children to the paternal grandparents. The court ordered the Department of Human Resources (“DHR”) to conduct an evaluation of the grandparents’ and the parents’ houses. F.G.W., the children’s mother, filed a motion to set aside the temporary-custody order or, in the alternative, to order visitation.[1] The juvenile court denied the mother’s motion. The mother filed a “Motion To Reconsider Denial of Pendente [Lite] Visitation.” Subsequently, the mother filed a motion requesting that the case be transferred to the Juvenile Court of Coffee County; that motion was granted. The Coffee Juvenile Court ordered that all temporary orders entered by the Dale Juvenile Court remain in effect pending further orders of the court.
On December 18, 2003, the mother filed a motion asking the court to set aside the Dale Juvenile Court’s order awarding the paternal grandparents temporary custody. On January 9, 2004, the juvenile court denied the mother’s motion for reconsideration of visitation and the mother’s motion to set aside the temporary-custody order.
A final hearing was held on March 5, 2004. The testimony at the hearing indicates that the police had been called to the mother and father’s house on several occasions. On one occasion, the mother was arrested for threatening the father with a gun, but that charge was later dismissed. The mother and the father have initiated divorce proceedings several times in the past, and currently there is a divorce proceeding pending. The mother originally *3 believed that a man with whom she was having an affair had fathered the daughter until paternity tests showed that the daughter was biologically related to the father.
On the day that the daughter died, the mother left her two sons at home alone and she left the daughter with the mother’s paramour while she went shopping and to a McDonald’s, a fast-food restaurant. She had left the daughter with her paramour in the past. The mother stated that the daughter died from injuries suffered from having her head placed in a ceiling fan while the fan was set on its highest setting and then having her head “knocked” into the side of a dresser by the mother’s paramour. The mother admitted that she originally believed that the daughter had merely fallen. The mother stated that she is scheduled to testify against her paramour in an upcoming criminal trial. However, she admitted that her paramour has accused her of killing the daughter. A letter from the district attorney indicated that he no longer considered the mother a suspect in the daughter’s death. However, the mother admitted that DHR’s child-abuse report of the incident that caused the daughter’s death was marked as “indicated” and that DHR has listed her on its child-abuse registry.
The juvenile court found both sons to be dependent as defined by § 12-15-1(10), Ala.Code 1975, and it awarded custody of the sons to the paternal grandparents; it denied all other pending motions. The mother appeals.
The mother argues that the trial court abused its discretion in determining that her sons were dependent because, she alleges, the children did not meet any of the definitions of a dependent child provided in § 12-15-1(10). In essence, she argues that the case is more in the nature of a custody case than a determination-of-dependency case. The mother also argues that the trial court abused its discretion in awarding custody to the paternal grandparents because, she argues, as a natural parent, she has a prima facie right to custody of the children and the trial court did not find her to be unfit.
In O.L.D. v. J.C., 769 So.2d 299, 302 (Ala.Civ.App.1999), this court stated:
“The father appeals from the order denying him custody. He argues that the evidence did not establish that he was unfit and, or guilty of such misconduct or neglect as would overcome the presumption afforded to him by [Ex parte] Terry [, 494 So.2d 628 (Ala.1986)]. This case is not simply a custody dispute between a parent and nonparent, but, rather, is a dependency case; therefore, Terry is not applicable. See Anonymous v. Anonymous, 504 So.2d 289 (Ala.Civ.App.1986). The grandparents’ petition alleged that the child was a ‘dependent child,’ within the meaning of that term as defined in § 12 — 15—l(10)(c), Ala. Code 1975. ‘ “When the petitioners alleged that the child was dependent, that terminology triggered the trial court to utilize the dependency statutes of the juvenile code.’” W.T. v. State Dep’t of Human Resources, 707 So.2d 647, 650 (Ala.Civ.App.1997), quoting C.P. v. M.K., 667 So.2d 1357, 1360 (Ala.Civ.App.1994) (Thigpen, J., specially concurring in part and dissenting in part). Upon finding a child to be ‘dependent/ the court may make any order of disposition necessary to protect the welfare of the child, including transferring-legal custody of the child to a relative. § 12-15-71(a)(3)c., Ala.Code 1975; Jones v. Webb, 524 So.2d 374 (Ala.Civ.App.1988). This court held in W.T. that the parental presumption set forth in Ex parte Terry and Ex parte D.J. [, 645 So.2d 303 (Ala.1994),] is not applicable in the dispositional phase of a *4 dependency proceeding under § 12-15-71(a). W.T., supra. The appropriate standard to be applied in the dispositional phase of a dependency proceeding is the ‘best interests of the child’ standard. Id. See also Jones, supra, and D.K.G. v. J.H., 627 So.2d 937 (Ala.Civ.App.1993). Further, there is no requirement that the court find a parent unfit when dependency is found and custody is placed with a relative to protect the welfare of the child. W.T., supra.”
The juvenile court, in finding the children dependent, did not specify which subsection of § 12-15-1(10) applied to the children. The paternal grandparents argue that the children could be found dependent under any of the following provisions of § 12-15-1(10), defining a dependent child as a child:
“d. Whose home, by reason of neglect, cruelty, or depravity on the part of the parent, parents, guardian, or other person in whose care the child may be, is an unfit and improper place for the child; or
[[Image here]]
“f. Who is in a condition or surroundings or is under improper or insufficient guardianship or control as to endanger the morals, health, or general welfare of the child; or
[[Image here]]
“j. Who is physically, mentally, or emotionally abused by the child’s parents, guardian, or other custodian or who is without proper parental care and control necessary for the child’s well-being because of the faults or habits of the child’s parents, guardian, or other custodian or their neglect or refusal, when able to do so, to provide them.”
Certainly, leaving a child in an abusive environment would meet any of the definitions of a dependent child listed above, and it is undisputed that the mother left the daughter in such an environment. However, the evidence does not indicate that the mother left the sons in that environment, and there was no evidence presented that the sons were ever around the paramour. Nevertheless, the juvenile court could have found the sons to be dependent under § 12-15-l(10)(m). This court has held:
“Ala. Code 1975, § 12-15-l(10)(m), provides that a child may be declared dependent if he is ‘for any other cause in need of the care and protection of the state.’ This subsection has been held to give the court the authority to declare a child dependent under the totality of the circumstances. Martin [v. State Dep’t of Human Resources,] 502 So.2d [769,] 771 [(Ala.Civ.App.1987)]; see also Kennedy v. State Dep’t of Human Resources, 535 So.2d 168, 170 (Ala.Civ.App.1988). ‘Once a child is found to be dependent, the trial court is authorized to make any of a number of dispositions under Ala.Code 1975, § 12-15-71.... ’ M.M. v. C.M., 600 So.2d 316, 318 (Ala.Civ.App.1992). The transfer of custody upon a finding of dependency is governed by the child’s best interests. Jones v. Webb, 524 So.2d 374, 374 (Ala.Civ.App.1988).”
M.M.S. v. D.W., 735 So.2d 1230, 1232 (Ala.Civ.App.1999).
In the present case, the mother and the father had had several incidents where the police had been called to their house. On one occasion, the mother had threatened the father with a gun. The evidence indicated that the sons had been left alone and unsupervised while the mother conducted her affair; that relationship continued for a significant amount of time. Although the district attorney no longer considered the mother a suspect in the daughter’s death, the mother admitted that her paramour had accused her of harming the daughter. After considering *5 the totality of the circumstances, including the mother’s failure to protect the daughter and her leaving the sons unsupervised, coupled with the mother and the father’s turbulent past, we conclude that the juvenile court’s finding of dependency is supported by clear and convincing evidence.
The mother also argues that the juvenile court erred in giving custody to the paternal grandparents because the court did not find her to be unfit. A parent does not have to be found unfit when a child is determined to be dependent and custody is placed with a relative to protect the welfare of the child. Matters of dependency and child custody are within the discretion of the trial court. Where ore tenus evidence is presented, the judgment of the trial court is presumed correct and will be reversed on appeal only upon a showing that it' was plainly and palpably wrong. R.G. v. Calhoun County Dep’t of Human Res., 716 So.2d 219 (Ala.Civ.App.1998)(citing G.C. v. G.D., 712 So.2d 1091 (Ala.Civ.App.1997)). A judgment of dependency and the subsequent transfer of custody are provided for in § 12-15-71, Ala.Code 1975, and are governed by the best interests of the child. Jones v. Webb, 524 So.2d 374 (Ala.Civ.App.1988). Accordingly, the juvenile court did not have to find the mother unfit in order to award the paternal grandparents custody of the children.
The mother is correct that the common-law presumption is that a child’s best interests are served by entrusting its care and custody to the natural parents. See Ex parte D.J., 645 So.2d 303 (Ala.1994); N.G. v. L.A., 790 So.2d 262 (Ala.Civ.App.2000). This presumptive right can be overcome only by a finding that a parent is unfit. Ex parte Terry, 494 So.2d 628 (Ala.1986). However, if a parent has voluntarily forfeited custody, or the trial court has removed custody from the parent to a nonparent, the presumption favoring the parent does not exist. Id.[2]
The judgment of the juvenile court is affirmed.
AFFIRMED.
PITTMAN, J., concurs.
THOMPSON, J., concurs in the result, without writing.
CRAWLEY and MURDOCK, JJ., dissent, with writings.

. An attorney was originally appointed to represent the children's father. While the dependency petitions were pending, the father and the mother began divorce proceedings. The father did not seek custody of the children, and he now lives with the paternal grandparents.

. We note that the mother could seek visitation with the children. Further, the mother could also seek custody of the children in future proceedings if she could prove a material change of circumstances. Following the entry of a judgment transferring custody or a parent’s voluntary forfeiture of custody of a child, a parent may not regain custody of the child without proving that such a custody modification would "materially promote” the child’s welfare. Ex parte McLendon, 455 So.2d 863 (Ala.1984).