DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

————————————————

CHARLES DAVIS,

Appellant,

v.

BANK OF AMERICA, N.A.;
PNC BANK NATIONAL ASSOCIATION; and
C&K INVESTMENT LLC d/b/a CITY LIMIT AUTO SALES,

Appellees.

No. 2D21-2795

————————————————

September 30, 2022

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for Hillsborough County; Emily A. Peacock, Judge.

Aldo Bollinger of Bollinger Law Group, PLLC, St. Petersburg, for Appellant.

Tricia J. Duthiers of Liebler, Gonzalez & Portuondo, Miami, for Appellee Bank of America, N.A.

No appearance for remaining Appellees.

SILBERMAN, Judge.

Charles Davis appeals the trial court's order denying his motion to dismiss Bank of America's (BOA) Counterclaim/Third-Party Complaint with prejudice or his alternative motion to compel arbitration and motion to transfer venue.  Because the trial court erred in denying Davis's motion to compel arbitration, we reverse and remand for entry of an order granting that motion.  We affirm the remainder of the trial court's order as it pertains to Davis.

## I.  FACTUAL BACKGROUND

Davis was the sole member, manager, and registered agent of C&K Investment, LLC d/b/a City Limit Auto Sales (C&K).  Davis opened a business checking account with BOA on behalf of C&K.  He signed a signature card for the account as C&K's manager, acknowledging and agreeing that the account is governed by various documents, including a deposit agreement.  By its terms, the agreement is binding on BOA, C&K as the account owner, and on all persons "with authority to withdraw funds from the account or otherwise operate the account."  The record reflects that Davis had such authority.  The deposit agreement also contains provisions addressing arbitration, jurisdiction and venue, and liability.

2

The jurisdiction and venue provision states the following:

> Any action or proceeding regarding your account or this deposit agreement must be brought in the state in which the financial center that maintains your account is located. You submit to the personal jurisdiction of that state. . . . If a Claim is submitted to arbitration and the state where that financial center is located is not reasonably convenient for you, then you and we will attempt to agree on another location. If you and we are unable to agree on another location, then the location will be determined by the Administrator or arbitrator.

Except for certain limitations concerning class actions and jury trial waivers, the agreement provides that either party may compel binding arbitration.

In March 2017 Davis deposited a $30,000 check payable to C&K into C&K's account at BOA. The following day he obtained a $20,000 cashier's check from the C&K account payable to himself. The very next day BOA entered a "return item chargeback" on the C&K account as the $30,000 check did not clear. This resulted in an overdraft of C&K's account due to insufficient funds. The record reflects that BOA sent multiple statements to C&K reflecting that the account had a negative balance of $20,422.45. In July 2017 BOA "force closed" C&K's overdrawn account.

As alleged in Davis's second amended complaint against PNC Bank, in September 2018 he deposited the $20,000 cashier's check into his personal PNC account. Although the cashier's check indicated on its face that it was void after 90 days from its issuance in March 2017, BOA honored the check and transferred the funds into Davis's PNC account. Davis asserted that PNC refused to release the funds to Davis and froze his account without explanation.

Based on allegations contained in the pleadings, at some point PNC and BOA entered into an indemnification agreement and PNC returned the cashier's check to BOA.[1]

## II.  PROCEDURAL BACKGROUND

Davis sued PNC for breach of contract and civil theft based on its freezing of his account and its failure to release to him the funds from the cashier's check. PNC then sued BOA as a third-party defendant pursuant to the indemnification agreement.

BOA filed affirmative defenses directed to PNC's third-party complaint and a Counterclaim/Third-Party Complaint against Davis

---

[1] Our record does not contain a copy of the indemnification agreement.

4

and C&K.  The Counterclaim/Third-Party Complaint sought a declaratory judgment against Davis and C&K with respect to the parties' rights and obligations concerning the $20,000 cashier's check.

In response to BOA's Counterclaim/Third-Party Complaint, Davis filed a motion to dismiss with prejudice or in the alternative a motion to compel arbitration and motion to transfer venue of the Counterclaim/Third-Party Complaint.  The trial court denied Davis's motions.

Davis has raised multiple issues on appeal, including that the trial court erred in denying his challenge to venue and in refusing to enforce the arbitration provision contained in the deposit agreement.  We address these two issues but reject without discussion Davis's other issues.  We also address an argument made by BOA regarding service of process on C&K.

### III.  VENUE

On appeal, review of a contractual provision as to venue is de novo where there are no factual issues to be resolved.  *See Se. Concrete Constructors, LLC v. W. Sur. Co.*, 331 So. 3d 763, 765 (Fla. 2d DCA 2021); *Am. Boxing & Athletic Ass'n v. Young*, 911 So. 2d

5

862, 864 (Fla. 2d DCA 2005).  Where the trial court must resolve factual issues relating to venue, we determine whether the trial court's factual findings are supported by competent substantial evidence or are clearly erroneous; we review de novo the trial court's legal conclusions.  *See Breed Techs., Inc. v. AlliedSignal Inc.*, 861 So. 2d 1227, 1230 (Fla. 2d DCA 2003); *Wynn Drywall, Inc. v. Aequicap Program Adm'rs, Inc.*, 953 So. 2d 28, 30 (Fla. 4th DCA 2007).

Davis argues that as to BOA's Counterclaim/Third-Party Complaint against him, venue is not proper in Hillsborough County but instead would be proper in Missouri.  He asserts that the BOA account was established in Missouri and that C&K was a Missouri entity that has been dissolved.  However, the deposit agreement provides that any action as to the account or the deposit agreement "must be brought in the state in which the financial center that maintains your account is located."

Davis did not establish that the BOA financial center that maintained the C&K account was located outside of Hillsborough County at the time of the events giving rise to this litigation.  In fact, the account statements contained in our record list a Tampa

6

address for BOA in the section titled "Customer service information."

Further, Davis is a Hillsborough County resident and initiated his lawsuit against PNC in Hillsborough County to enforce his rights to the funds represented by "a Cashier's Check issued by Bank of America, guaranteed by Bank of America, drawn on Bank of America's own funds and signed by a cashier guaranteeing the funds in the amount of $20,000." Under Florida Rule of Civil Procedure 1.180(a), a third-party defendant such as BOA may assert against a plaintiff such as Davis "any defenses that the defendant has to the plaintiff's claim. The third-party defendant may also assert any claim against the plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the defendant."

Davis's claim against PNC arises from the cashier' check he obtained from BOA and deposited into his PNC account and from PNC's handling of that check. PNC's claim for indemnification against BOA arises from the same cashier's check and the indemnification agreement between PNC and BOA. And BOA's claim against Davis arises from the circumstances surrounding

7

Davis's purchase of the cashier's check, his later deposit of that check with PNC, and his claim for the funds represented by that check.

In light of the circumstances, we conclude that Davis has not established error in the trial court's denial of his challenge to venue in Hillsborough County.

## IV.  ARBITRATION

We review the denial of a request to compel arbitration de novo.  *Stacy David, Inc. v. Consuegra*, 845 So. 2d 303, 306 (Fla. 2d DCA 2003).  "Courts generally favor [arbitration] provisions, and will try to resolve an ambiguity in an arbitration provision in favor of arbitration."  *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013).  Because "[a]rbitration provisions are contractual in nature[,] . . . [t]he intent of the parties to a contract, as manifested in the plain language of the arbitration provision and contract itself, determines whether a dispute is subject to arbitration."  *Id.* (citing *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999)).

Both federal statutory provisions and the Florida arbitration code require courts to consider three elements when ruling on a motion to compel arbitration: "(1) whether a valid written agreement

8

to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." *Shotts v. OP Winter Haven, Inc.*, 86 So. 3d 456, 464 (Fla. 2011) (quoting *Seifert*, 750 So. 2d at 636).

As to the first element, it is "for the court, not the arbitrator, to determine 'whether a *valid* written agreement to arbitrate exists.' " *Id.* at 471 (quoting *Seifert*, 750 So. 2d at 636). An arbitration agreement is not valid and will be unenforceable if it violates public policy. *See id.* (citing *Glob. Travel Mktg., Inc. v. Shea*, 908 So. 2d 392, 398 (Fla. 2005)).

Davis contends that he is not individually bound by the deposit agreement because he signed the account signature card on behalf of C&K. In the alternative, he asserts that if he is bound by the agreement, then he is entitled to compel arbitration of BOA's claims under that agreement. He does not otherwise challenge the validity and enforceability of the arbitration provision. While BOA maintains that Davis is bound by the deposit agreement, it argues unpersuasively that arbitration of the claims should not be compelled and should be resolved in court based on equity.

9

Based on the terms of the deposit agreement and the record before us, we agree with BOA that the deposit agreement is binding on Davis as a person with authority to withdraw funds from the account and to operate the account. Simply put, Davis has not established anything to the contrary.

As to the second element, a court must consider whether an arbitrable issue exists. *See Shotts*, 86 So. 3d at 464 (citing *Seifert*, 750 So. 2d at 636). "Determining whether an arbitrable issue exists requires the court to examine the plain language of the parties' arbitration agreement." *Bailey v. Women's Pelvic Health, LLC*, 309 So. 3d 698, 701 (Fla. 1st DCA 2020) (citing *Lake City Fire & Rescue Ass'n, Local 2288 v. City of Lake City*, 240 So. 3d 128, 130 (Fla. 1st DCA 2018)). Further, "[c]ontracts with arbitration clauses create a presumption of arbitrability." *Id.* (quoting *Robertson Grp., P.A. v. Robertson*, 67 So. 3d 1112, 1114 (Fla. 1st DCA 2011)).

In its Counterclaim/Third-Party Complaint BOA asserts that pursuant to the deposit agreement Davis "is personally responsible for overdrafts, fees, and other debts associated" with C&K's account. It seeks a declaration of the parties' rights, a declaration that Davis's claims against PNC are null and void, and a judgment

in its favor including attorney's fees, court costs, and such other relief as is "just and proper."

The provisions of the deposit agreement dealing with resolving claims and arbitration specify that they apply to "any claim, dispute or controversy (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties or declaratory or equitable relief)" made by either party against the other, "arising from or relating in any way to this deposit agreement . . . or the deposit relationship between us." Based on the nature of BOA's claim and the terms of the deposit agreement, an arbitrable issue exists.

As to the third element, courts must determine whether the right to arbitrate has been waived. *See Shotts*, 86 So. 3d at 464 (citing *Seifert*, 750 So. 2d at 636). "The right to arbitration, like any contract right, can be waived." *Raymond James Fin. Servs., Inc. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005) (quoting *Nat'l Found. for Cancer Rsch. v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (D.C. Cir. 1987)). The Florida Supreme Court has "defined 'waiver' as the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional

11

relinquishment of a known right." *Id.* "[A] party may waive his or her right to arbitration by filing a lawsuit without seeking arbitration, by filing an answer to a pleading seeking affirmative relief without raising the right to arbitration, and by moving for summary judgment." *Green Tree Servicing, LLC v. McLeod*, 15 So. 3d 682, 687 (Fla. 2d DCA 2009) (internal citations omitted).

Nothing here suggests that Davis waived any right to compel arbitration. He did not file suit against BOA; rather, he filed suit against PNC based on its handling of the cashier's check he had deposited. PNC then brought a claim against BOA, leading BOA to file its Counterclaim/Third-Party Complaint against Davis and C&K. Davis then responded with his motion to dismiss and alternative motion to compel arbitration and to transfer venue. Because BOA has not established that Davis waived the right to compel arbitration, we reverse the trial court's order denying Davis's motion to compel arbitration.

## V. BOA'S ARGUMENTS AS TO SERVICE OF PROCESS ON C&K

BOA argues that the trial court's order should be affirmed as to both Davis and C&K. However, BOA glosses over a crucial

procedural problem regarding C&K. In its Counterclaim/Third-Party Complaint BOA added C&K as a named party to the litigation. However, it did not provide formal service of process of that pleading to C&K. *See* § 48.062, Fla. Stat. (2021) (providing acceptable methods of service of process on a limited liability company). Instead, it appears BOA provided a copy of its Counterclaim/Third-Party Complaint to Davis's personal counsel through the Florida Courts E-filing Portal.

As noted previously, Davis responded to BOA's pleading by filing, on his own behalf, a motion to dismiss and alternative motions to compel arbitration and to transfer venue. Davis pointed out that BOA had added C&K as a party to the litigation but had not served C&K with process.

C&K did not respond to BOA's Counterclaim/Third-Party Complaint and did not make an appearance in the trial court or in this appeal. In its order denying Davis's motion and alternative motions, and despite the lack of service or any appearance in the case by C&K, the trial court directed both Davis and C&K to file answers to BOA's pleading.

13

BOA, through its appellate counsel, has argued to this court that C&K was provided with proper service because: 1) Davis is the sole member, manager, and registered agent of C&K; 2) BOA's Counterclaim/Third-Party Complaint was provided to Davis's counsel; 3) Davis's responsive motion "raised substantive arguments on behalf of C&K"; and 4) Davis waived service of process on C&K by raising those substantive arguments.

We are puzzled and troubled by counsel's argument that simply providing a copy of BOA's pleading to Davis's lawyer, apparently through the Florida Court's E-Filing Portal, constitutes service of process on C&K. This argument and the others described above were made without citation to any legal authority that actually supports those arguments.

Counsel quotes from section 48.062 dealing with service of process on limited liability companies. However, counsel ignores the requirements of that statute in arguing that providing a copy of BOA's pleading to Davis's counsel constitutes formal service of process. The cases that counsel cites involve significantly different circumstances and are inapposite. Indeed, counsel cites to cases regarding waiver when a defending party agrees to accept service of

14

process by mail, yet counsel fails to acknowledge that nothing in this record reflects that C&K, Davis, or Davis's counsel agreed to accept service on C&K by copy of BOA's pleading to Davis's counsel.

We are further troubled by counsel's argument that Davis's motions made in response to BOA's pleading were also made on behalf of C&K and constitute a waiver of service. It is clear from those motions that they were filed only on Davis's behalf.

We make these observations due to the lack of legal authority or record support identified in BOA's brief and during oral argument for the above-described contentions. However, because C&K has not been served in this litigation and has not appeared in this appeal, we do not address further that portion of the trial court's order directing C&K to respond to BOA's Counterclaim/Third-Party Complaint.

## VI.  CONCLUSION

We affirm the trial court's order to the extent that it denied Davis's motion to dismiss BOA's claim and his motion to transfer venue. We reverse the trial court's order to the extent that it denied Davis's motion to compel arbitration, and we remand for the trial court to enter an order compelling arbitration in accordance with

the deposit agreement. *See Yam Exp. & Imp. LLC v. Nicaragua Tobacco Imps., Inc.*, 298 So. 3d 1173, 1175 (Fla. 3d DCA 2020).

Affirmed in part; reversed in part; and remanded.

CASANUEVA and SMITH, JJ., Concur.

———————————————

Opinion subject to revision prior to official publication.