THOMPSON, Presiding Judge.
T.E.W., Jr. (“the father”), appeals a judgment of the Calhoun Juvenile Court finding his minor child dependent and *158 awarding custody of her to T.S. (“the aunt”), the child’s maternal aunt.
■ The record indicates that the child was born to D.S. (“the mother”) and the father in 2005; the mother and the father never married. In January 2007, - the juvenile court entered a judgment adjudicating the father’s paternity and incorporating an agreement reached by the mother and the father pertaining to custody and child support. Pursuant to that judgment, the father was awarded visitation at the mother’s discretion and was ordered to pay child support.
On December 2, 2010, the aunt filed an action in the juvenile court seeking to have the child declared dependent and seeking an award of custody of the child. The aunt alleged that the mother was ill and unable to care for the child and that the mother fully supported an award of custody of the child to the aunt. In an affidavit submitted in support of her dependency petition, the aunt alleged that the father lived in a home with a number of his relatives, including a disabled brother who posed a threat to the child, who was five years old at the time. Also on December 2,2010, the juvenile court entered an order awarding pendente lite custody of the child to the aunt.
On January 5, 2011, the father filed an answer disputing the aunt’s claim that the child was dependent, and he asserted a counterclaim for an award of custody of the child. Later in January 2011, the aunt filed a suggestion of death in which she informed the juvenile court that the mother had died on December 23, 2010.[1]
The juvenile court conducted an ore ten-us hearing on March 9, 2011. In May 2011, the aunt moved that the child be evaluated by a mental-health professional. The child’s guardian ad litem opposed that motion. The juvenile court granted the aunt’s motion and specified that the child’s guardian ad litem approve the parties’ selection of a therapist. On October 12, 2011, the aunt filed a notice in the juvenile court alleging that she was unable to comply with the May 2011 order because, she alleged, the guardian ad litem had refused to approve a counselor for the child because he had stated that he did not feel that the child needed counseling.
On October 18, 2011, the juvenile court entered a judgment finding the child dependent and awarding custody of her to the aunt. The father timely appealed.
The evidence in the record on appeal indicates that, from the time of the child’s birth in July 2005 until December 2009, the father visited the child only in the mother’s home. The father stated that the mother’s moods had varied and that he had found it easier to allow her to arrange his visitation at her convenience rather than to request specific visitation with the child. The father testified that until December 2009 his visitation with the child had been regular and that he had sometimes stayed overnight in the mother’s home in order to exercise visitation with the child.
The father testified that he began having regular weekend visitation with the child in his home in December 2009 and that he often helped the mother with the child during the week. The father testified that, because of the mother’s deteriorating health during the fall of 2010, he often took the child to or retrieved her from school, and he stated that the child *159 sometimes visited him overnight on school nights during that time.
According to the father, before Thanksgiving 2010 the mother informed him that the child would spend the Thanksgiving holiday with the aunt and that he would have the child for the Christmas holidays. However, according to the aunt, shortly before Thanksgiving, the mother arranged for an attorney to draft an agreement pursuant to which she assigned her custodial rights to the child to the aunt. Thereafter, in early December 2010, the aunt filed her dependency petition and was awarded temporary custody of the child. The father testified that he first learned that the child was living with the aunt when he was served with the paperwork for the dependency action in mid-December 2010.
The father testified that when he was served with the paperwork for the dependency action he immediately contacted his attorney. The father stated that he did not attempt to contact the aunt because he did not know her contact information.
The father stated that a friend had informed him of the mother’s death five days after it occurred when the mother’s obituary was published in a newspaper. The aunt testified that, when the mother died, she did not have the father’s telephone number and, thus, did not attempt to contact him to inform him of the mother’s death until December 30, 2010. The aunt testified that she ultimately obtained the father’s contact information from an Internet search and that the father had already learned of the mother’s death at the time she contacted him.
The father acknowledged that between the entry of the December 2, 2010, pen-dente lite custody order and the March 9, 2011, hearing on the merits he had contacted the child only twice by telephone and that those contacts had occurred in January and February 2011. The father testified that he did not have the aunt’s contact information in December 2010. The father explained that he did not contact the child more frequently because he did not want to do anything to upset the child. In addition, the aunt arranged for the child to call the father on the telephone on two other occasions. It does not appear that the father visited the child between the time the aunt obtained pendente lite custody and the March 9, 2011, hearing. The aunt argued before the juvenile court that the father’s failure to maintain regular contact with the child demonstrated a lack of commitment to the child.
The aunt also based a portion of her dependency allegations on the fact that, until shortly after the mother’s death, the father had resided with his disabled brother. The father’s brother is disabled as a result of a brain injury he suffered in an automobile accident. The father testified that his disabled brother has neurological and intellectual deficits and that he also has physical injuries that require that he use a walker or a wheelchair. The father testified that his disabled brother needs continual supervision and that the father’s mother provides that care.
In 2001, the disabled brother was accused of inappropriate sexual contact with a four- or five-year-old girl. The father insisted that he knew nothing about those allegations. The father explained that he did not live with his disabled brother and his mother when those allegations arose, that he did not want to have anything to do with that situation, and that his mother had handled the situation. The father stated that, even after the birth of the child and the time when the child visited him in the home he shared with his disabled brother, he had not inquired about that incident. He also acknowledged that the child’s mother had expressed concern about the child’s being around his disabled *160 brother because of the 2001 abuse allegations. The father testified that, in spite of those concerns expressed by the mother, he had still not inquired about the 2001 alleged abuse incident.
The father insisted, however, that the child had never been alone in the presence of his disabled brother when she visited him in the home he had shared with his disabled brother. The father explained that the child had had little interaction with his disabled brother.
In January 2011, the father moved from the home he had shared with his disabled brother into a three-bedroom mobile home. At the direction of the juvenile court, the Calhoun County Department of Human Resources (“DHR”) conducted a home-study evaluation on the father’s home. DHR approved the father’s home as appropriate and adequate for the father and the child.
A DHR social worker who had investigated the 2001 allegation of abuse against the disabled brother testified at the hearing. The social worker testified that she had found the allegations of abuse to be credible but that the district attorney had declined to prosecute the disabled brother because of his intellectual deficiencies. The social worker testified that, assuming a young girl was living in the home with the disabled brother in 2001, she would have “strongly cautioned” the child’s parents about restricting the child’s contact with the disabled brother. However, the social worker stated, she would not have recommended the removal of a child from the home at the time she conducted the investigation of the abuse allegations.
The father testified that the mobile-home park in which his mobile home was located belonged to an estate managed by his mother for the benefit of his disabled brother. That mobile-home park was located between 300 and 500 yards from the home the father had shared with his mother and his disabled brother.
The father testified that, in addition to the mobile-home park, his family also owned a horse stable. He stated that his primary employment consisted of managing the mobile-home park and the horse stable for his family and that, although he did not have a set salary in that employment, he withdrew money from the family business when he needed it. The father also testified that he obtained some additional income working as a farrier and that he occasionally earned income painting or remodeling homes. The father stated that his work schedule was flexible and that, if he received custody of the child, he did not expect to need for the child to attend an after-school care program. The father also testified that his mother and his grandmother both lived nearby in the family home and that both were available and willing to assist him in caring for the child if the need arose.
The father testified that his child-support obligation to the mother had been $700 per month, plus the $110 cost of reimbursing the mother for health-insurance coverage for the child. According to the father, he had not missed any child-support payments to the mother, and he had paid child support to the aunt during the time that the child has been in her pendente lite custody.
The aunt presented evidence indicating that the child was doing well in her home and performing well in school. The aunt also presented evidence indicating that she had always been actively involved in the child’s life and that the child had spent a great deal of time in the aunt’s home during her life. The aunt testified that the mother had wanted the aunt, rather than the father, to have custody of the child and *161 that she had “made promises” to the mother.
On appeal, the father argues that the evidence does not support the juvenile court’s dependency finding. A “dependent child” is one
“who has been adjudicated dependent by a juvenile court and is in need of care or supervision and meets any of the following circumstances:
“1. Whose parent, legal guardian, legal custodian, or other custodian subjects the child or any other child in the household to abuse, as defined in subdivision (2) of Section 12-15-301 or neglect as defined in subdivision (4) of Section 12-15-301, or allows the child to be so subjected.
“2. Who is without a parent, legal guardian, or legal custodian willing and able to provide for the care, support, or education of the child.
“3. Whose parent, legal guardian, legal custodian, or other custodian neglects or refuses, when able to do so or when the service is offered without charge, to provide or allow medical, surgical, or other care necessary for the health or well-being of the child.
“4. Whose parent, legal guardian, legal custodian, or other custodian fails, refuses, or neglects to send the child to school in accordance with the terms of the compulsory school attendance laws of this state.
“5. Whose parent, legal guardian, legal custodian, or other custodian has abandoned the child, as defined in subdivision (1) of Section 12-15-301.
“6. Whose parent, legal guardian, legal custodian, or other custodian is unable or unwilling to discharge his or her responsibilities to and for the child.
“7. Who has been placed for care or adoption in violation of the law.
“8. Who, for any other cause, is in need of the care and protection of the state.”
§ 12-15-102(8), Ala. Code 1975.
With regard to the standard this court applies in reviewing a dependency determination, this court has stated:
“A finding of dependency must be supported by clear and convincing evidence. [Former] § 12 — 15—65(f)[, Ala. Code 1975 (now codified at § 12-15-310, Ala.Code 1975)]; M.M.S. v. D.W., 735 So.2d 1230, 1233 (Ala.Civ.App.1999). However, matters of dependency are within the sound discretion of the trial court, and a trial court’s ruling on a dependency action in which evidence is presented ore tenus will not be reversed absent a showing that the ruling was plainly and palpably wrong. R.G. v. Calhoun County Dep’t of Human Res., 716 So.2d 219 (Ala.Civ.App.1998); G.C. v. G.D., 712 So.2d 1091 (Ala.Civ.App.1997); and J.M. v. State Dep’t of Human Res., 686 So.2d 1253 (Aa.Civ.App.1996).”
J.S.M. v. P.J., 902 So.2d 89, 95 (Ala.Civ.App.2004). “Clear and convincing evidence” is
“[e]videnee that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.”
§ 6-ll-20(b)(4), Aa.Code 1975.
The evidence in the record on appeal indicates that the father has regularly visited the child and paid child support. In the year before the mother’s death, the *162 father became more involved in the child’s life and provided the mother assistance in caring for the child during that time.
In her brief before this court, the aunt cites financial considerations pertaining to the father as support for her contention that the child is dependent. The aunt contends that the father’s employment is unstable and that he is dependent on his mother, who manages the disabled brother’s estate, for his income. The father’s testimony, however, indicates that he manages a family business and has supported himself from the income he receives from that business. The record contains no evidence indicating that the father’s dependence upon the family business for his income is any more unstable than that of any other person working for an employer.
The father testified that he regularly and consistently paid child support and for the child’s health insurance and that he could support the child if she was in his custody. There is no evidence indicating that the father has ever failed to contribute to the child’s support or that he was unable to support her at the time of the hearing in this matter.
The aunt also contends that the child is dependent because the father has not obtained health-insurance coverage for the child. We decline to agree that a child is dependent for that reason. Further, the evidence indicates that the father had reimbursed the mother for the premiums she had paid to maintain health insurance for the child, and, at the time of the hearing, the father indicated that the child was covered under the aunt’s health-insurance policy. There is no evidence indicating that the father could not or would not obtain health-insurance coverage for the child if custody was awarded to him.
The aunt also contends that the father’s lack of involvement in the child’s life during the period after the mother’s death demonstrates a lack of commitment to the child on the part of the father. The aunt points out that the father did not attempt to see the child at Christmas. However, the evidence indicates that the father learned that the aunt had pendente lite custody of the child in mid-December 2010 and that he immediately consulted his attorney about how to appropriately handle the situation. The father testified that he did not know how to contact the aunt, and the aunt’s testimony that she could not contact the father to alert him about the mother’s death indicates that the two had had little contact and knowledge about each other.
The evidence indicates that the father has never been assertive with regard to his rights to the child. The father indicated that he had visited the child at the mother’s discretion because he did not want to “rock the boat.” He also made little effort to contact the child during the time between the mother’s death and the March 9, 2011, hearing; the father explained his failure to maintain regular contact with the child as his attempt “not to upset [the child] in any way.” The father also testified that he was not confrontational, that he believed that the aunt was providing excellent care for the child, and that he believed that the aunt was doing what she believed was in the child’s best interests. We agree with the aunt that the father has sometimes failed to actively assert his rights as a father. However, there is no indication in the record on appeal that the father has abandoned the child or that he did not believe that the child was being appropriately cared for during the pen-dency of this matter.
The aunt also bases her dependency allegations on her concerns regarding the father’s disabled brother. However, shortly after the mother’s death, the father moved out of the home he had shared with *163 his family and established his own residence for himself and the child. The DHR social worker who had investigated the 2001 abuse allegations against the disabled brother stated that, even given those allegations, which she found credible, she would not have recommended the removal of a young child from the home; rather, she testified she would have cautioned the child’s parents not to allow the child to be around the disabled brother without supervision. The father testified that the child has never been left alone with his disabled brother and that he did not plan to leave her alone with him in the future. The record contains no evidence indicating that the child has ever been left unsupervised with the disabled brother.
Given the totality of the circumstances, we must conclude that the juvenile court’s dependency determination is not supported by clear and convincing evidence. Rather, the evidence indicates that the father has been regularly involved in the child’s life and that he has consistently provided for her support. The father became more involved in caring for the child in response to the mother’s health crisis in the year before the mother’s death. The concerns regarding the father’s ability to support the child, or the child’s possible exposure to the father’s disabled brother, are speculative, particularly given that there is no evidence indicating that the father has failed to support the child or that she was ever left unsupervised with the father’s disabled brother. The record contains no evidence indicating that the father is not ready and willing to appropriately parent and care for the child.
The aunt based her claim for custody of the child on an assertion that the child is dependent. The evidence does not support a finding that the child is dependent. Accordingly, we reverse the juvenile court’s judgment and remand the cause for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
PITTMAN, THOMAS, and MOORE, JJ., concur.
BRYAN, J., concurs in the result, without writing.

. The mother and the parties believed that the mother was suffering from symptoms of fibro-myalgia. The record indicates that the mother learned only shortly before her death that she had terminal cancer. It is not clear, however, when the mother learned of that diagnosis, or when the father was informed of that diagnosis.